IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLINA MEDICAL SALES, INC.,<br>    510 East Williams Street<br>    Apex, North Carolina 27502-2151,<br><br>and<br><br>AMERICARE HEALTH SYSTEMS,<br>    1823 Third Street North<br>    Jacksonville Beach, Florida 32250,<br><br>        Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT,<br>    Secretary of Department of<br>    Health and Human Services<br>    200 Independence Avenue, SW<br>    Washington, D.C. 20201,<br><br>and<br><br>LESLIE NORWALK,<br>    Acting Administrator of<br>    Centers for Medicare and<br>    Medicaid Services<br>    200 Independence Avenue, SW<br>    Washington, D.C. 20201,<br><br>        Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

For their complaint, plaintiffs Carolina Medical Sales, Inc. and AmeriCare Health Systems allege as follows:

## NATURE OF THE CASE

1.  This is an action for declaratory, injunctive, and mandamus relief against unlawful agency action that threatens the effective provision of critical medical supplies to Medicare beneficiaries afflicted with diabetes.

2.  Pursuant to section 302(b)(1) of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), 42 U.S.C.A. § 1395w-3, the Secretary of the Department of Health and Human Services ("Secretary") was required to establish and implement programs for the competitive acquisition of competitively priced items and services in areas throughout the United States (hereinafter referred to as the "competitive bidding program"). The items and services selected by Congress for the competitive bidding program included certain durable medical equipment and medical supplies that are covered items under Part B of the Medicare Act.

3.  Contrary to his statutory authority, the Secretary, acting through the Centers for Medicare and Medicaid Services ("CMS"), selected "mail order diabetic supplies" as an item for competitive bidding. The MMA does not give CMS the authority to select items and services for the competitive bidding program based on the method of delivery of the item or service (e.g., *mail order* diabetic supplies). Rather, Congress authorized the establishment of competitive bidding programs based on the *type* of item or service being supplied (e.g., diabetic supplies).

4.  Plaintiffs are suppliers of diabetic supplies. Their primary or nearly exclusive method of providing diabetic supplies to their customers is through mail order. Plaintiffs are immediately faced with the deleterious impact of CMS's unlawful mail order diabetic supplies competitive bidding program.

5.  As a result of the Secretary's unlawful implementation of the competitive bidding program, "store front" suppliers of diabetic supplies will enjoy a competitive advantage over

"mail order" suppliers who are providing the exact same items in the exact same geographic area, including sometimes to the exact same patients. Mail order diabetic suppliers who do not submit bids for the Secretary's new program will not be able to participate as Medicare suppliers in the competitive acquisition areas, while store front suppliers will continue to be able to participate in Medicare without being subjected to the competitive bidding program. Store front suppliers also will be entitled to Medicare payments based on the current fee schedule payment methodology, while mail order suppliers who are winning bidders and who are awarded a contract must accept lower payments set through the competitive bidding program. Furthermore, mail order providers of diabetic supplies face the possibility of being excluded from participation in Medicare altogether if the bids they submit for the competitive acquisition program are not accepted by CMS and they are not awarded a contract, while store front suppliers of diabetic supplies do not face the possibility of outright exclusion from Medicare.

6. Medicare beneficiaries will also suffer injury if CMS's proposed competitive bidding program for mail order diabetic supplies is allowed. Many beneficiaries in need of diabetic supplies have limited mobility and are unable to leave home on their own, and therefore need to obtain their needed diabetic testing supplies through mail order. CMS's proposed program, which threatens to exclude many mail order suppliers from Medicare, will necessarily limit beneficiaries' access to suppliers by reducing the number of mail order suppliers eligible to furnish Medicare covered items.

7. Even if CMS had the statutory authority to create a competitive bidding program for "mail order" diabetic supplies, CMS failed to promulgate by regulation its designation of mail order diabetic supplies as a product category for competitive acquisition, as mandated by the Medicare Act, 42 U.S.C. § 1395hh, and the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 553(b). Instead, CMS announced its selection of items and services for competitive bidding on the CMS web site. CMS therefore failed to provide Plaintiffs with notice and an opportunity to comment on the potential selection of mail order diabetic supplies as an item for any initial rounds of competitive bidding, and failed to provide a concise and general statement of the basis and purpose for its decision to treat diabetic supplies differently for payment purposes based solely on the method of delivery.

8. Plaintiffs ask this Court to declare that the Defendants' selection of "mail order diabetic supplies" as items subject to competitive bidding is not authorized under the MMA and to permanently enjoin Defendants from taking any further action to implement the competitive bidding program with "mail order diabetic supplies" as a category of items or services for competitive bidding.

9. In the alternative, Plaintiffs ask this Court to declare that Defendants' failure to make their selection of "mail order diabetic supplies" as an item that is subject to competitive bidding in a properly promulgated regulation is in violation of the Medicare Act and the APA, to permanently enjoin the Defendants from taking any actions in furtherance of the competitive bidding program for "mail order diabetic supplies" until such time as Defendants have complied with the requirements of the Medicare Act and the APA, and/or to grant an order of mandamus requiring the Secretary to promulgate regulations for the selection of items and services for the competitive bidding program.

## JURISDICTION AND VENUE

10. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361. This case arises under the laws of the United States, Plaintiffs have no administrative or other remedies available to them, and the Defendants owe Plaintiffs a clearly defined and

nondiscretionary duty to promulgate by regulation the selection of items and services for competitive bidding.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

## PARTIES

12.     Plaintiff Carolina Medical Sales, Inc. is a privately held corporation organized and existing under the laws of the State of North Carolina.  Carolina Medical Sales, Inc. has its principal place of business at 510 East Williams Street, Apex, North Carolina 27502-2151.  Carolina Medical Sales, Inc. is currently a Medicare enrolled supplier in good standing furnishing Medicare beneficiaries with diabetic testing supplies through the mail.  As a mail order supplier, Carolina Medical Sales, Inc. furnishes diabetic testing supplies to Medicare beneficiaries throughout the country, including in several of the competitive acquisition areas designated by the Secretary for inclusion in the competitive bidding program.

13.     Plaintiff AmeriCare Health Systems is a privately held corporation organized and existing under the laws of the State of Florida.  AmeriCare Health Systems has its principal place of business at 1823 Third Street, North, Jacksonville Beach, Florida 32250.  AmeriCare Health Systems is currently a Medicare enrolled supplier in good standing who furnishes mail order diabetic testing supplies to Medicare beneficiaries throughout the country, including in several of the competitive acquisition areas designated by the Secretary for inclusion in the competitive bidding program.

14.     Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services (HHS).  In that capacity he is responsible for the conduct and policies of HHS, including the conduct and policies of the Centers for Medicare and Medicaid Services (CMS).  He is sued in his official capacity.

15. Defendant Leslie Norwalk is the Acting Administrator of CMS. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

### I. Diabetic Supplies

16. Diabetes is a serious illness that afflicts over 21 million Americans. Because there is still no cure for diabetes, there is near universal agreement that education and prevention are the most effective ways to combat the all-too-common perils of this disease.

17. Numerous clinical studies have demonstrated that diabetes education and compliance with a patient's physician-prescribed blood glucose testing regimen are keys to diabetes management.

18. Diabetes supplies are used with blood glucose monitors to effectively monitor the blood sugar levels of patients with diabetes. Having such supplies, which are made by reliable manufacturers who have tested the accuracy of the supplies and glucose monitors, readily available is essential to maintaining compliance with a physician-prescribed blood glucose testing regimen. Failure to maintain safe blood sugar levels can lead to many types of medical complications for individuals with diabetes, including cardiac conditions, blindness, loss of limbs and death.

19. Many "mail order" suppliers of diabetic testing products, including plaintiffs, specialize in the care of diabetes. This specialized care is possible because the suppliers are able to consolidate operations in one or a few select locations and employ individuals knowledgeable about the disease and diabetic testing and care. Furthermore, the regular contact and services of specialists in diabetes care offered by mail order suppliers provide unparalleled benefits to beneficiaries and help such individuals to remain compliant with their physician-prescribed testing regimens and avoid common complications from diabetes. Plaintiffs, like many mail

order diabetes suppliers, have longstanding relationships with their patients akin to those between a patient and any other health care provider.

20. Many Medicare beneficiaries have limited mobility and are unable to access store front suppliers on a regular basis to obtain their needed products and supplies. Other beneficiaries live in areas where the products or brands they prefer may not be readily available or may only be obtained after driving long distances. Therefore, it is important for Medicare beneficiaries to have ready access to diabetic testing supplies through mail order suppliers.

## II.    Legal Framework

### A.    Medicare Act

21. The Medicare Act was established under Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. §§ 1395 – 1395*hhh*, and provides payment for the provision of covered medical care services, equipment, and supplies to aged and disabled persons.

22. Part B of the Medicare Act, 42 U.S.C. §§ 1395j – 1395w-4, provides supplementary medical insurance for covered medical services and covered medical supplies, including Durable Medical Equipment, Prosthetics, Orthotics and Supplies (DMEPOS). Blood glucose monitors and related diabetic testing supplies are items of DMEPOS.

23. Medicare payment for DMEPOS items and services is currently based on a fee schedule payment methodology, pursuant to section 1834 of the Act. 42 U.S.C. § 1395m. Medicare pays for DMEPOS items based upon a product coding system, the Health Care Product Coding System (HCPCS). Fee schedule payment amounts for DMEPOS are the same for all items included in a HCPCS code regardless of whether DMEPOS is supplied to a beneficiary through the mail or through a store front retail supplier.

**B.    Medicare Prescription Drug, Improvement, and Modernization Act of 2003**

24.    Section 302(b)(1) of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA") (Pub. L. 108-173) amended section 1847 of the Social Security Act to require the Secretary to establish competitive bidding programs in competitive acquisition areas throughout the United States for the furnishing of specified items and services under Medicare Part B. *See* 42 U.S.C.A. § 1395w-3.

25.    Section 1847(a)(1)(B) of the Act requires the Secretary to phase in the competitive bidding program among competitive acquisition areas so that competition under the program occurs in 10 of the largest metropolitan statistical areas (MSAs) in 2007; 80 of the largest MSAs in 2009; and additional areas after 2009. 42 U.S.C.A. § 1395w-3(a)(1)(B)(i).

26.    Section 1847(a)(1)(B) of the Act allows the Secretary to phase in the competitive bidding program first among the highest cost and highest volume items and services or those items and services that the Secretary determines have the largest savings potential. 42 U.S.C.A. § 1395w-3(a)(1)(B)(ii).

27.    Section 1847(a)(2) of the Act defines the items and services that are subject to the competitive bidding program to include durable medical equipment and supplies that are covered items as defined in section 1834(a)(13) of the Act (42 U.S.C. § 1395m(a)(13)) and for which payment would otherwise be made under section 1834(a) of the Act (42 U.S.C. § 1395m(a)). 42 U.S.C.A. § 1395w-3(a)(2)(A). Section 1834(a) of the Act does not distinguish between durable medical equipment and supplies provided through the mail versus durable medical equipment and supplies provided through retail stores for payment purposes, and neither do any regulations established by the Secretary under section 1834(a).

28.    The Secretary is required to conduct the competitive bidding program among entities supplying durable medical equipment and supplies in each competitive acquisition area

in which the competitive bidding program is implemented for such items and services, pursuant to Section 1834(b)(1) of the Act. 42 U.S.C.A. § 1395w-3(b)(1). The statute does not give the Secretary any discretion to exempt suppliers from competitive bidding based on the method of delivery utilized, or not utilized, by the supplier.

29. Section 1847(b)(5) of the Act requires the Secretary to make payment for competitively priced items and services based on the bids submitted and accepted for the provision of such services. Based on the bids, the Secretary is required to determine a *single* payment amount for each item or service in each competitive acquisition area. 42 U.S.C.A. § 1395w-3(b)(5)(A). The Secretary is not authorized to apply different payment amounts for the provision of diabetic supplies in a competitive acquisition area based on whether the supplies are delivered by mail or purchased in a retail store.

30. Congress specifically provided for only three instances in which the Secretary could consider the mode of delivery of items and services in establishing the competitive acquisition program:

    a.    First, Congress allowed the Secretary to exempt rural areas and areas with low population density within urban areas that are not competitive from the competitive acquisition program, unless there is a significant national market through mail order for a particular item and service. 42 U.S.C.A. § 1395w-3(a)(3)(A).

    b.    Second, Congress allowed the Secretary to establish a process whereby a physician could prescribe a particular brand or mode of delivery of an item or service within a particular HCPCS code, if the physician determined that use of the particular item or service would avoid an adverse medical outcome for an

individual, as determined by the Secretary. Congress prohibited the Secretary from providing a different payment amount for the prescription item than what would be otherwise applicable for the item or service. 42 U.S.C.A. § 1395w-3(a)(5)(A)-(B).

c.  Third, Congress required the Secretary to conduct a demonstration project on the application of the competitive acquisition program to clinical diagnostic laboratory tests furnished by entities that did not have a face-to-face encounter with the patient, 42 U.S.C.A. § 1395w-3(e)(1), *i.e.*, clinical diagnostic laboratory tests performed on specimens received through the mail or via other means of delivery.

31.  Congress was clearly aware of mail order markets for Medicare-covered items and supplies, but chose not to authorize the Secretary to subject these markets to competitive bidding on a stand-alone basis.

## III. Competitive Acquisition Rulemaking

### A. Proposed Rule

32.  On May 1, 2006, CMS published a proposed rule in the Federal Register to implement a competitive bidding program for certain covered items of DMEPOS ("Proposed Rule"). *See* 71 Fed. Reg. 25654.

33.  In the preamble to the Proposed Rule, CMS contemplated conducting competitive bidding in each competitive acquisition area based on items grouped into product categories. CMS did not identify any product categories for competitive bidding in the proposed rule.

34.  In the Proposed Rule, CMS stated that it would designate the items to be included in the competitive bidding program through program instructions.

35. At no point in the Proposed Rule did CMS indicate that it would select items or services for competitive bidding based on the method of delivery of a particular item or service (e.g., through the mail or through retail stores) for the 2007 competitive bidding program.

**B.     Final Rule**

36. On April 10, 2007, CMS issued a final rule establishing competitive bidding programs for certain Medicare Part B-covered DMEPOS items in ten different metropolitan statistical areas throughout the United States (the "Final Rule"). *See* 72 Fed. Reg. 17992.

37. At no point in the Final Rule did CMS explain which items were to be included in the 2007 implementation of the competitive bidding program, or the basis and purpose for their selection.

38. The Final Rule stated that CMS would designate the items to be included in the competitive bidding program through program instructions or by other means.

39. At the web site "www.dmecompetitivebid.com," CMS listed the DMEPOS product categories selected for competitive bidding. One of the product categories selected was "Mail Order Diabetic Supplies." This product category includes: (1) alkaline batteries; (2) J-cell batteries; (3) lithium batteries; (4) silver oxide batteries; (5) blood glucose/reagent strips; (6) calibrator solution/chips; (7) lancet devices (each); and (8) lancet devices (per box).

**IV.    The Competitive Bidding Process**

40. The Final Rule describes the process for the competitive bidding program.

41. Suppliers who wish to furnish items in a competitively bid product category must submit a bid for that item to CMS. The bid must be at or below the item's current fee schedule amount.

42. A supplier's "composite bid" for a product category is determined by multiplying the supplier's bid for each item in a product category by the item's "weight," which is based on

the utilization of the individual item compared to other items within the same product category using national data. CMS will add the supplier's weighted bids for the items, and the sum of these bids will form the supplier's composite bid.

43.   CMS will take all composite bids for the product category within a competitive bidding area, group them from lowest to highest composite bid price, and calculate the product category's "pivotal bid."

44.   The pivotal bid is the lowest composite bid that CMS can accept, where there are a sufficient number of suppliers with composite bids at or below the pivotal bid level to meet beneficiary demand for the items in that product category.

45.   All suppliers at or below the product category's pivotal bid will be invited to furnish the product category to beneficiaries in the competitive acquisition area (the "winning suppliers"). The single payment amount for an item furnished under a competitive bidding program is equal to the median of the accepted bids for that item that are at or below the pivotal bid for the product category that includes the item, in effect setting the new payment rate at a price that is lower than the price at which fifty percent of the winning suppliers actually bid.

46.   The competitive bidding window opened on May 15, 2007, and is scheduled to close on July 27, 2007. Suppliers who fail to submit qualifying bids prior to the close of the bidding window are precluded from consideration as winning bidders and will be prevented from providing Medicare covered diabetes supplies in the ten bidding areas selected by CMS.

## V.   Impact of Defendants' Unlawful Mail Order Diabetic Supplies Competitive Bidding Program on Plaintiffs

47.   Since January 1, 1989, payment for most DMEPOS items and services under Part B of the Medicare Act has been established through fee schedule payment methodology. Specifically, Medicare payments for DMEPOS items and services have been equal to 80 percent

of the actual charge for the item or the fee schedule amount for the item, whichever is less. The fee schedule amounts for DMEPOS have generally been adjusted annually based on the change in the Consumer Price Index for all Urban Consumers (CPI-U) for the 12 month period ending June 30 of the preceding year.

48.     The single payment amount established under the competitive bidding program will be lower than the current fee schedule-based payment amount. Pursuant to section 1847 of the Act, the Secretary is not allowed to award a contract to any entity under the competitive bidding program unless the Secretary expects the total amounts to be paid to contractors in a competitive acquisition area to be less than the total amounts that would otherwise be paid. 42 U.S.C.A. § 1395w-3(b)(2)(A)(iii). Mail order suppliers who choose to remain as Medicare suppliers and who are awarded contracts under the competitive bidding program will therefore be forced to accept payment amounts for the provision of diabetic supplies that are lower than the payment amounts made to store front suppliers providing the same diabetic supplies in the same competitive acquisition area.

49.     After completion of the competitive bidding process and the award of contracts to winning suppliers, if a beneficiary in a competitive acquisition area chooses to obtain by mail diabetic supplies from the "mail order diabetic supplies" product category, the beneficiary must obtain the supplies from a supplier that has been awarded a contract by CMS in order to obtain Medicare reimbursement. Thus, suppliers that do not bid or whose bids are unsuccessful will be locked out as Medicare suppliers in any competitive acquisition area. *See* 42 U.S.C.A. § 1395w-3(b)(6)(A).

50.     If, however, a beneficiary chooses to obtain the same diabetic supplies from a retail store location, he or she can obtain the supplies from any enrolled Medicare store front

supplier. Therefore, while mail order diabetic suppliers, including Plaintiffs, face the possibility of exclusion as Medicare providers if they do not submit winning bids, store front suppliers providing the same diabetic supplies in the area have no risk of exclusion as Medicare providers.

51. CMS's "mail order diabetic supplies" competitive bidding program has therefore created a competitive market advantage in favor of store front suppliers of diabetic testing supplies – not to mention a potentially devastating loss of access to preferred mail order suppliers for beneficiaries – without any authorization by Congress.

## COUNT I
### (Invalidity of Agency Action Based on Lack of Statutory Authority Under the MMA)

52. The allegations contained in paragraphs 1 - 51 above are realleged and incorporated by reference herein.

53. Defendants were not authorized under the MMA to conduct competitive bidding for the provision of DMEPOS based on mode of delivery, and therefore, were not authorized to designate "mail order diabetic supplies" as an item for competitive bidding.

54. Defendants' selection of mail order diabetic supplies as an item for competitive bidding is in excess of their statutory jurisdiction, authority, or limitations, or short of their statutory right, and is therefore unlawful. 5 U.S.C. § 706(2)(C).

55. As a result of Defendants' unlawful selection of mail order diabetic supplies as an item for competitive bidding, Plaintiffs have and will continue to suffer irreparable injury.

56. Plaintiffs are therefore entitled to a declaration that Defendants' selection of mail order diabetic supplies as an item for competitive bidding is not authorized under the MMA and a permanent injunction preventing Defendants from taking any further action in implementing a competitive bidding program for mail order diabetic supplies.

## COUNT II
### (Invalidity of Agency Action Under 42 U.S.C. § 1395hh)

57.     The allegations contained in paragraphs 1 - 56 above are realleged and incorporated by reference herein.

58.     Defendants established new substantive legal standards of payment and eligibility for the provision of mail order diabetic supplies to Medicare beneficiaries through the competitive bidding program without promulgating such standards through regulation as required by 42 U.S.C. § 1395hh(a).

59.     Defendants' selection of mail order diabetic supplies as an item for competitive bidding through a posting on CMS's web site is in excess of their statutory jurisdiction, authority, or limitations, or short of a statutory right, without observance of procedure required by law, and otherwise not in accordance with law, and is therefore unlawful. 5 U.S.C. § 706(2)(A), (C), and (D).

60.     As a result of Defendants' unlawful selection of mail order diabetic supplies as an item for competitive bidding, Plaintiffs have and will continue to suffer irreparable injury.

61.     Plaintiffs are therefore entitled to a declaration that Defendants' failure to promulgate through regulation their selection of mail order diabetic supplies as an item for the competitive bidding program is a violation of 42 U.S.C. § 1395hh. Plaintiffs are also entitled to a permanent injunction preventing Defendants from taking any further action to implement a competitive bidding program for mail order diabetic supplies until such time as Defendants comply with the requirements of 42 U.S.C. § 1395hh.

## COUNT III
**(Invalidity of Agency Action Under 5 U.S.C. § 553)**

62. The allegations contained in paragraphs 1 - 61 above are realleged and incorporated by reference herein.

63. Defendants established new substantive legal standards of payment and eligibility for the provision of mail order diabetic supplies to Medicare beneficiaries through the competitive bidding program without promulgating such standards through notice and comment rulemaking as required by the Administrative Procedure Act, 5 U.S.C. § 553(b). Defendants also failed to provide a concise general statement of the basis and purpose for their decision to select mail order diabetic supplies as an item for competitive bidding as required by the Administrative Procedure Act, 5 U.S.C. § 553(c).

64. Defendants' selection of mail order diabetic supplies as an item for competitive bidding is without observance of procedure and otherwise not in accordance with law and is therefore unlawful. 5 U.S.C. § 705(2)(A) and (D).

65. As a result of Defendants' unlawful selection of mail order diabetic supplies as an item for competitive bidding, Plaintiffs have and will continue to suffer irreparable injury.

66. Plaintiffs are therefore entitled to a declaration that Defendants' failure to promulgate by regulation through notice and comment rulemaking their selection of mail order diabetic supplies for the competitive bidding program is a violation of the APA. Plaintiffs are also entitled to an injunction preventing Defendants from taking any further action in implementing a competitive bidding program for "mail order diabetic supplies" until such time as Defendants comply with the requirements of 5 U.S.C. § 553.

## COUNT IV
### (Mandamus Relief)

67. The allegations contained in paragraphs 1 - 66 above are realleged and incorporated by reference herein.

68. Defendants owed plaintiffs a clearly defined and nondiscretionary duty to promulgate by regulation through notice and comment rulemaking the selection of items and services for competitive bidding.

69. Plaintiffs have no other adequate remedies available to them to redress Defendant's failure to perform this duty.

70. Plaintiffs are entitled to an order of mandamus requiring Defendant to promulgate by regulation through notice and comment rulemaking the selection of items and services for competitive bidding under section 302(b)(1) of the MMA.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request as relief in this action that the Court:

1. Enter an order declaring that Defendants' selection of "mail order diabetic supplies" as an item that is subject to competitive bidding is not authorized under the MMA.

2. Permanently enjoin Defendants from taking any further action to implement a competitive bidding program for "mail order diabetic supplies."

3. In the alternative to request for relief (1) above, enter an order declaring that Defendants' failure to promulgate by regulation its selection of "mail order diabetic supplies" as an item that is subject to competitive bidding violates 42 U.S.C. § 1395hh and the Administrative Procedure Act.

4. In the alternative to request for relief (2) above, permanently enjoin Defendants from taking any action in furtherance of the competitive bidding program for "mail order

diabetic supplies" until such time as Defendants have complied with the requirements of 42 U.S.C. § 1395hh and the Administrative Procedure Act.

  5. Grant an order of mandamus for Defendants to promulgate regulations through notice and comment rulemaking establishing the items and services for competitive bidding under section 302(b)(1) of the MMA.

  6. Award plaintiffs such other relief as the Court may deem just and proper.

Dated: July 20, 2007           Respectfully submitted,

                       /s/ Caroline M. Mew
                       Frederick Robinson
                       D.C. Bar. No. 367223
                       Caroline M. Mew
                       D.C. Bar No. 467354
                       FULBRIGHT & JAWORSKI L.L.P.
                       801 Pennsylvania Avenue N.W.
                       Washington, D.C. 20004
                       (202) 662-0200

                       Attorneys for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Carolina Medical Sales, Inc. and AmeriCare Health Systems

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Frederick Robinson & Caroline Mew
Fulbright & Jaworski LLP
801 Pennsylvania Avenue, NW
Washington, DC 20004
202-662-0200

**DEFENDANTS**

Michael O. Leavitt, Secretary of Department of Health and Human Services and Leslie Norwalk, Acting Administrator of Centers for Medicare and Medicaid Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and <u>one</u> in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**⦿ C. Administrative Agency Review**
- ☒ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Claims for declaratory, injunctive and mandamus pursuant to 5 U.S.C. Section 706, 42 U.S.C. Section 1395hh, and 28 U.S.C. Section 1361.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ N/A   Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐ NO ☒   If yes, please complete related case form.

DATE 7/20/07   SIGNATURE OF ATTORNEY OF RECORD  *Caroline M. Mew*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.