## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLINA MEDICAL SALES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services, et al., <br><br> Defendants. | Civil Action No. 1:07-cv-01298 |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants in the above-captioned action respectfully move this Court for an order dismissing Plaintiffs' Complaint on the grounds of lack of subject matter jurisdiction and failure to state a claim.  In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of points and authorities.  A proposed order and declaration are also attached.

Dated  January 11, 2008                    Respectfully submitted,

OF COUNSEL:                                JEFFREY BUCHOLTZ
JAMES C. STANSEL                           Acting Assistant Attorney General
Acting General Counsel                     SHEILA M. LIEBER
                                           Assistant Branch Director, Federal Programs
                                           Branch
MARK D. POLSTON
Deputy Associate                           _____/s/_____
General Counsel for Litigation             C. LEE REEVES
                                           Department of Justice
LINDA KEYSER                               20 Massachusetts Avenue, N.W., Room 7109
MARCUS CHRIST                              Washington, D.C.  20530
Attorneys                                  Tel: 202-514-4805
Department of Health                       Fax: 202-616-8470
and Human Services                         *Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Overview Of The Medicare Act.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Section 302 Of The Medicare Prescription Drug,
            Improvement and Modernization Act of 2003.. . . . . . . . . . . . . . . . . . . . . . . . 2

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
       CLAIMS BECAUSE CONGRESS HAS PRECLUDED JUDICIAL REVIEW OF
       DEFENDANTS' IMPLEMENTATION OF THE COMPETITIVE BIDDING
       PROGRAM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Secretary's Phased-In Implementation of Competitive Bidding Programs is
            Not Reviewable... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Plaintiffs' Challenge to the Secretary's Designation of Items Subject to
            Competitive Bidding is Not Reviewable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.    BECAUSE PLAINTIFFS HAVE SUFFERED NO ACTUAL INJURY, AND
       BECAUSE THE STATUTE IS NOT INTENDED TO REMEDY THE TYPE OF
       INJURY THEY MAY SUFFER AT SOME FUTURE DATE, PLAINTIFFS LACK
       STANDING TO SUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.    Plaintiffs Lack Constitutional Standing Because They Have Failed to Demonstrate
            That They Have Suffered an Actual or Imminent Injury. . . . . . . . . . . . . . . . . . . 14

      B.    Plaintiffs' Claims Will Not Ripen for at Least Seven Months, If Ever. . . . . . . . . 15

      C.    Plaintiffs Lack Prudential Standing Because They Have Failed to Demonstrate
            That Their Alleged Injuries Fall Within The Zone Of Interests Protected By The
            Statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.   PLAINTIFFS' CHALLENGE TO THE SECRETARY'S DECISION TO DISTINGUISH
       BETWEEN "ITEMS AND SERVICES" BY DELIVERY MODE FAILS TO STATE A
       CLAIM ON WHICH RELIEF CAN BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGES**

*Air Courier Conference v. Am. Postal Workers Union*,
    498 U.S. 517 (1991)............................................................................................ 16

*Allen v. Wright*,
    468 U.S. 737 (1984).................................................................................... 13, 16

*American Society of Cataract and Refractive Surgery v. Thompson*,
    279 F.3d 447 (7th Cir. 2002). ................................................................... 9, 10

*Amgen, Inc. v. Smith*,
    357 F.3d 103 (D.C. Cir. 2004). ........................................................... 9, 10, 25

*Bell Atlantic v. Twombly*,
    127 S. Ct. 1955 (2007).................................................................................. 7, 8

*Block v. Community Nutrition Institute*,
    467 U.S. 340 (1984)........................................................................................... 9

*Bowen v. Michigan  Academy of Family Physicians*,
    476 U.S. 667 (1986).................................................................................... 8, 9

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................... 14

*Clinton v. City of New York*,
    524 U.S. 417 (1998)....................................................................................... 13

*Duncan v. Walker*,
    533 U.S. 167 (2001)....................................................................................... 25

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004) .......................................................................................... 16

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003). .................................................................... 14

*Green v. Cashman*,
    605 F.2d 945 (6th Cir. 1979). ........................................................................ 17

*Hewitt v. Leavitt*,
    3:07-CV-1038-K (N.D. Tex. Dec. 2, 2007). .................................................. 15

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ................................................................................. 17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................... 7, 13, 14

*Nat'l Wildlife Fed'n v. EPA,*
    286 F.3d 554 (D.C. Cir. 2002) ............................................................ 23, 24

*Painter v. Shalala,*
    97 F.3d 1351 (10th Cir. 1996) ................................................................ 9

*Renne v. Geary,*
    501 U.S. 312 (1991) ................................................................................. 7

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................................... 7

*Texas v. United States,*
    523 U.S. 296 (1998) ............................................................................... 15

*Tootle v. Secretary of Navy,*
    446 F.3d 167 (D.C. Cir. 2006) ................................................................ 7

*Transmission Agency of Northern California v. FERC,*
    495 F.3d 663 (D.C. Cir. 2007) .............................................................. 16

*United States v. Erika, Inc.,*
    456 U.S. 201 (1982) ................................................................................. 2

*Warth v. Seldin,*
    422 U.S. 490 (1975) ......................................................................... 13, 15

## STATUTES AND REGULATIONS

42 U.S.C. §§ 1395 ...................................................................................... *passim*

42 C.F.R. § 414.200 ......................................................................................... 19

42 C.F.R. § 414.400 ........................................................................................... 4

42 C.F.R. § 414.402 ........................................................................................... 5

42 C.F.R. § 414.410. ................................................................................................ 6

42 C.F.R. § 414.412(a) ............................................................................................. 5

42 C.F.R. § 414.414(c) .......................................................................................... 4, 18

42 C.F.R. § 424.58(b)(1) ......................................................................................... 5

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1, 7

71 Fed. Reg. 25654 . ............................................................................................ 21, 22

72 Fed. Reg. 17992. ...................................................................................... 12, 21, 23

H.R. Rep. No. 108-178 (II). .............................................................................. *passim*

H.R. Rep. No. 108-391. ........................................................................................ 3, 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLINA MEDICAL SALES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services, et al., <br><br> Defendants. | Civil Action No. 1:07-cv-01298 |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Dated  January 11, 2008  
OF COUNSEL:  
JAMES C. STANSEL  
Acting General Counsel  


MARK D. POLSTON  
Deputy Associate  
General Counsel for Litigation  

LINDA KEYSER  
MARCUS CHRIST  
Attorneys  
Department of Health  
and Human Services  

Respectfully submitted,  
JEFFREY BUCHOLTZ  
Acting Assistant Attorney General  
SHEILA M. LIEBER  
Assistant Branch Director, Federal Programs Branch  

_____/s/_____  
C. LEE REEVES  
Department of Justice  
20 Massachusetts Avenue, N.W., Room 7109  
Washington, D.C.  20530  
Tel: 202-514-4805  
Fax: 202-616-8470  
*Attorneys for Defendants*

## <u>INTRODUCTION</u>

Plaintiffs come before the Court seeking an advisory opinion concerning the legality of the Secretary of Health and Human Services' ("the Secretary") implementation of a competitive bidding program designed to allow Medicare beneficiaries to obtain high quality durable medical equipment, prosthetics, orthotics and supplies[1] ("DMEPOS") at competitive prices. Plaintiffs speculate that this as yet unimplemented program in which the supplier Plaintiffs are allowed to compete may harm them because they may not earn the same rate of return as they did prior to the advent of the competitive bidding program. They do so before the first bid to supply DMEPOS has been selected, in the name of interests that the statute was never intended to protect, and despite a statutory scheme that expressly precludes judicial review of the major features of the program's design and implementation by the Secretary. At every turn, Plaintiffs' Complaint is fatally flawed.

Plaintiffs ask the Court to assume the Secretary's statutorily-designated role as the architect of a competitive bidding program for DMEPOS, and, in effect, to order the Secretary to continue to pay for DMEPOS supplied to Medicare beneficiaries pursuant to the existing single-item fee schedule payment system, notwithstanding Congress's considered judgment to the contrary. Congress has found that a competitive bidding system would be more cost effective, and would maintain quality standards for the provision of DMEPOS. The crux of Plaintiffs' Complaint is that the Secretary has treated mail-order DMEPOS suppliers differently than storefront DMEPOS suppliers, requiring only the former to submit to a competitive bidding process at this time. Plaintiffs are allowed to compete in this program, but apparently would

---

[1] The term "durable medical equipment, prosthetics, orthotics and supplies" generally speaking, "includes iron lungs, oxygen tents, hospital beds, . . . wheelchairs, . . . blood-testing strips and blood glucose monitors . . . [and] seat-lift chair[s] . . . .," *see* 42 U.S.C. § 1395x(n).

prefer not to do so, or, perhaps more accurately, would prefer to compete in a program of their own design.

As demonstrated below, Plaintiffs' Complaint suffers from three independent yet equally fatal jurisdictional deficiencies; namely, statutory preclusion of judicial review, lack of standing, and lack of ripeness. Furthermore, their Complaint fails to state a claim on which relief can be granted. For each of these reasons, Plaintiffs' Complaint must be dismissed.

## STATUTORY BACKGROUND

### A.    Overview Of The Medicare Act.

Title XVIII of the Social Security Act, commonly known as Medicare, 42 U.S.C. §§ 1395, *et seq.*, establishes a program of health insurance for the elderly and disabled. The program provides payment for covered medical services provided to eligible Medicare beneficiaries. *Id.* at §§ 1395c, 1395k, 1395w-22, 1395w-102. The Secretary is charged with promulgating regulations "necessary to carry out the administration of the insurance programs" established by the Medicare Act. *Id.* at § 1395hh(a)(1). Additionally, the Secretary serves as trustee of the Federal Supplementary Medical Insurance Trust Fund ("Medicare Part B Trust Fund"), *see United States v. Erika, Inc.*, 456 U.S. 201, 202-03 (1982), and as such, has a fiduciary duty to protect the trust fund's assets. Experts expect that "Medicare spending will continue to grow at a rate higher than the rest of the economy for the foreseeable future." *See* Nancy-Ann DeParle, *Medicare at 40: A Mid-Life Crisis?*, 7 J. Health Care L. & Pol'y 70, 85 (2004). Accordingly, "Medicare faces significant long-term financing challenges . . . ." *Id.*

### B.    Section 302 Of The Medicare Prescription Drug, Improvement and Modernization Act of 2003.

Plaintiffs' Complaint challenges the manner in which the Secretary has implemented a

subsection of the Part B supplementary medical insurance program[2], specifically, Section 302 of the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("MMA" or "the Act"). *See* Compl. at ¶ 2, *citing* 42 U.S.C. § 1395w-3 (2003) (directing the Secretary to establish a competitive bidding program by which suppliers compete for contracts to supply DMEPOS to Medicare beneficiaries in designated areas). For the past several years, Medicare has paid for "durable medical equipment . . . using a different fee schedule for each class of covered items." H.R. Rep. No. 108-391, at Title III § 302 (2003) (Conf. Rep.). The Centers for Medicare and Medicaid Services ("CMS") developed the fee schedule for each item of DMEPOS by using "a weighted average of either local or regional prices, subject to national limits (both floors and ceilings)" that were updated annually. *Id.* Congress investigated the DMEPOS fee schedule payment system, reviewing numerous studies conducted by the Department of Health and Human Services ("HHS") and the Government Accountability Office ("GAO"), and concluded that the existing fee schedule was too expensive for both taxpayers and Medicare beneficiaries and that it did not provide adequate value for what Medicare paid.[3] H.R. Rep. No. 108-178 (II), at Title III, § 302 (2003).

In an effort to "combat [such] waste, fraud, and abuse," Congress authorized a demonstration project to test whether a competitive acquisition program would be a more

---

[2] Medicare Part B covers health care services such as physician visits, outpatient diagnostic tests, and durable medical equipment. *See* 42 U.S.C. § 1395k(a)(1).

[3] "For example, [HHS] found that Medicare's reasonable payment methodology paid too much for parenteral nutrition . . . and that Medicare payments for hospital beds were substantially higher than rates paid by other payors." H.R. Rep. No. 108-178 (II), at Title III § 302.

efficient method of paying for DMEPOS.[4]  H.R. Rep. No. 108-178 (II), at Title III § 302.  The

competitive acquisition demonstrations were successful.  H.R. Rep. No. 108-178 (II), at Title III

§ 302.  Congress found that both taxpayers and Medicare beneficiaries "saved significantly and

quality standards were higher under the demonstration."  *Id.*  In addition, and of particular

relevance to this litigation, are Congress's findings that in the demonstration projects

"three-quarters of the DMEPOS winners were small businesses and beneficiary satisfaction

remained high."  *Id.*

Accordingly, in 2003 Congress enacted the Medicare DMEPOS Competitive Bidding

Program ("the competitive bidding program" or "the program") as part of the MMA.  *See* 42

U.S.C. § 1395w-3; 42 C.F.R. § 414.400 *et seq.*  The MMA requires the Secretary to "establish

and implement programs under which competitive acquisition areas are established throughout

the United States for contract award purposes for the furnishing under this part of competitively

priced [DMEPOS] items and services."  *Id.* at § 1395w-3(a)(1).  Under the program, the

Secretary is required to conduct "a competition among entities supplying items and services," *id.*

at § 1395w-3(b)(1), wherein suppliers submit bids, offering to furnish items or services

(including attendant services) for a set price.  *Id.* at § 1395w-3(b)(6)(B).

The competitive bidding program contains safeguards protecting the quality of goods and

services provided.  Suppliers must meet quality standards developed by the Secretary and CMS,

42 U.S.C. § 1395w-3(b)(2)(A)(i); 42 C.F.R. § 414.414(c), and must be accredited by a CMS-

---

[4]  "Three competitive bidding demonstrations for durable medical equipment, prosthetics, orthotics, and supplies were implemented, two in Polk County, Florida and one in the San Antonio, Texas area."  H.R. Rep. No. 108-391, at Title III § 302.

approved accreditation organization before placing a bid or being awarded a contract.  42 U.S.C. § 1395m(a)(20); 42 C.F.R. § 424.58(b)(1); *see also* CMS, Competitive Acquisition for DMEPOS, New Quality Standards, *available at* http://www.cms.hhs.gov/CompetitiveAcq forDMEPOS/04_New_Quality_Standards.asp#TopOfPage.

Section 302 of the MMA also provides for the protection of small DMEPOS suppliers. The Secretary is required to "tak[e] into account the needs of small providers" in developing financial standards that entities have to meet, 42 U.S.C. at § 1395w-3(b)(2)(A)(ii), and is required to "take appropriate steps to ensure that small suppliers of items and services have an opportunity to be considered for participation" in the competitive acquisition program when developing bidding and contracting procedures.  *Id.* at § 1395w-3(6)(D).  Moreover, contracts are awarded "to multiple entities submitting bids in each area for an item or service," *id.* at § 1395w-3(b)(4)(B), which will maintain "access of individuals to a choice of multiple suppliers" in each competitive bidding area.  *Id.* at § 1395w-3(b)(2)(A)(iv).

"[I]n order for a supplier to receive payment for items furnished to beneficiaries under a competitive bidding program, the supplier must submit a bid to furnish those items and be awarded a contract . . . ."  42 C.F.R. § 414.412(a).  The Secretary began phasing in the DMEPOS competitive bidding program in ten of the largest metropolitan areas[5] in 2007.  42 U.S.C. §

---

[5]  The Act refers to metropolitan areas as Metropolitan Statistical Areas ("MSAs"), which have the same meaning as that given by the Office of Management and Budget.  42 C.F.R. § 414.402.  The ten MSAs where the Secretary is required to begin implementing the competitive bidding program are Charlotte-Gastonia-Concord, North Carolina/South Carolina; Cincinnati-Middletown, Ohio/Kentucky/Indiana; Cleveland-Elyria-Mentor, Ohio; Dallas-Fort Worth-Arlington, Texas; Kansas City, Missouri/Kansas; Miami-Fort Lauderdale-Miami Beach, Florida; Orlando, Florida; Pittsburgh, Pennsylvania; Riverside-San Bernardino-Ontario, California; San Juan-Caguas-Guaynabo, Puerto Rico.  *See* CMS, Competitive Acquisition for DMEPOS, Metropolitan Statistical Areas, *available at* http://www.cms.hhs.gov/Competitive

1395w-3(a)(1)(B); 42 C.F.R. § 414.410.  On May 15, 2007, CMS issued a request for bids for the

first round of the Medicare DMEPOS competitive bidding program.  *See* CMS, Competitive

Acquisition for DMEPOS, Overview, Important Messages, *available at* http://www.cms.hhs.gov/

CompetitiveAcqforDMEPOS/.  The bidding deadlines were extended a number of times and the

bidding window closed September 25, 2007.  *Id.*

## FACTUAL BACKGROUND

Plaintiffs are suppliers of diabetic supplies, and their "primary or nearly exclusive method

of providing diabetic supplies to their customers is through mail order."  Compl. ¶ 4.  Plaintiffs

furnish diabetic supplies to Medicare beneficiaries "throughout the country, including in several

of the competitive acquisition areas designated by the Secretary for inclusion in the competitive

bidding program."  Compl. ¶¶ 12-13.

Plaintiffs' challenge is extremely narrow: They do not contest the Secretary's authority to

establish a competitive bidding program for diabetic supplies, nor do they allege that the

Secretary has misclassified items or services as diabetic supplies.  Rather, they challenge only the

manner in which the Secretary has implemented competitive bidding for diabetic supplies.  More

precisely, Plaintiffs allege that the Secretary exceeded his authority under the MMA by

"select[ing] items and services for the competitive bidding program based on the method of

delivery of the item or service (e.g., ***mail order*** diabetic supplies)."  Compl. ¶ 3 (emphasis in

original).  This was unlawful, Plaintiffs argue, because "Congress authorized the establishment of

competitive bidding programs based on the ***type*** of item or service being supplied (e.g., diabetic

supplies)."  *Id.*  (emphasis in original).

_____

AcqforDMEPOS/01b_MSAs.asp#TopOfPage.

The Complaint is silent as to whether Plaintiffs submitted bids to participate in the

DMEPOS competitive bidding program. The winning bidders will not be selected for

approximately three more months, until March 2008, and the competitive bidding program will

not be implemented until July 2008 at the earliest.

## STANDARD OF REVIEW

Defendants first seek dismissal of Plaintiffs' Complaint on the grounds that the Court

lacks subject matter jurisdiction over it. "Jurisdiction is power to declare the law, and when it

ceases to exist, the only function remaining to the court is that of announcing the fact and

dismissing the cause." *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998) (internal

quotations and citation omitted). Where, as here, subject matter jurisdiction is challenged, "a

court may look beyond the pleadings to resolve disputed jurisdictional facts when considering a

motion to dismiss under Fed. R. Civ. P. 12(b)(1)." *Tootle v. Secretary of Navy*, 446 F.3d 167,

174 (D.C. Cir. 2006). A plaintiff bears the burden of demonstrating that his case meets the

requirements of subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561 (1992). Courts should "presume that [they] lack jurisdiction unless the contrary appears

affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation

marks and citations omitted).

Defendants also seek dismissal of the Complaint because it fails to state a claim upon

which relief can be granted. In order to survive a Rule 12(b)(6) motion, a plaintiff must plead

"enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic v. Twombly*,

127 S. Ct. 1955, 1974 (2007). A complaint made up of "labels and conclusions" does not satisfy

this standard because "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Id.* at 1965.

## ARGUMENT

I.    **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
      PLAINTIFFS' CLAIMS BECAUSE CONGRESS HAS PRECLUDED JUDICIAL
      REVIEW OF DEFENDANTS' IMPLEMENTATION OF THE COMPETITIVE
      BIDDING PROGRAM.**

By establishing and implementing the DMEPOS competitive bidding program, the

Secretary is acting pursuant to the explicit directive from Congress that he "shall establish and

implement" competitive bidding programs "throughout the United States for contract award

purposes" to furnish DMEPOS to Medicare beneficiaries.  42 U.S.C. § 1395w-3(a)(1)(A).  In

furtherance of this objective, Congress explicitly barred judicial review of the key aspects

involved in establishing and implementing the program.  The MMA states in pertinent part that:

> [t]here shall be no administrative or judicial review under section 1395ff of this
> title, section 1395oo of this title, or otherwise, of –
> > (A) the establishment of payment amounts under paragraph (5);
> > (B) the awarding of contracts under this section;
> > (C) the designation of competitive acquisition areas under subsection
> > (a)(1)(A) of this section;
> > (D) the phased-in implementation under subsection (a)(1)(B) of
> > this section;
> > (E) the selection of items and services for competitive acquisition under
> > subsection (a)(2) of this section; or
> > (F) the bidding structure and number of contractors selected under
> > this section.

*Id.* at § 1395w-3(b)(10).

While there is generally a presumption of review of agency action, such presumption

"may be overcome by, *inter alia*, 'specific language or specific legislative history that is a

reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial

review that is 'fairly discernible' in the detail of the legislative scheme."  *Bowen v. Michigan*

*Academy of Family Physicians*, 476 U.S. 667, 673 (1986) (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 349-50 (1984)).  Congress could not have been clearer about its intent to foreclose judicial review of the fundamental aspects of the competitive bidding process under the MMA, expressly precluding such challenges in § 1395w-3(b)(10).  Indeed, several courts have upheld "no review" provisions as overcoming the presumption in *Michigan Academy* with respect to similar Medicare Part B programs.  *See, e.g.*, *Amgen, Inc. v. Smith*, 357 F.3d 103, 112 (D.C. Cir. 2004) (rejecting presumption of reviewability where Congress's intent to preclude judicial review is "clear and convincing" from the statutory text); *American Society of Cataract and Refractive Surgery v. Thompson*, 279 F.3d 447, 453 (7th Cir. 2002); *Painter v. Shalala*, 97 F.3d 1351, 1356-57 (10th Cir. 1996).

The issue in *Amgen*, for instance, was whether courts had subject matter jurisdiction to entertain a challenge to an equitable adjustment to the Medicare Part B rate at which the federal government pays hospitals for using a product manufactured by the plaintiff.  The plaintiff, Amgen, contended that the Secretary exceeded his statutory by making such adjustments to reimbursement rates.  In support of this argument, Amgen noted that a provision of the statute set forth the means for calculating pass-through payments, provided "that the Secretary 'shall' make pass-through payments, . . . and describe[d] the manner of their calculation."  *Amgen*, 357 F.3d at 114.  Given the mandatory nature of this language, Amgen argued that the Secretary lacked the discretion to make the challenged equitable adjustments.  *Id.* at 114-15.

The *Amgen* Court rejected this argument.  Observing that the statute expressly permitted the Secretary to make "other adjustments" to hospital payments beyond those already allowed by the statute, "as determined to be necessary to ensure equitable payments," the Court concluded

that "[i]t is difficult to see how a decision by the Secretary to adjust pass-through payments for a specific treatment downward, based on the Secretary's conclusion that the treatment is too costly relative to its benefits, would not lie at the heart of such authority." *Id.* at 114 (internal quotations omitted). Because the challenged adjustments were within the Secretary's discretion, and because Congress precluded judicial review of the Secretary's exercise of that discretion, the Court held that Amgen's challenge was foreclosed. *Id.* at 114, 118.

The plaintiffs in *American Society* sought to challenge a component of the formula by which physicians are reimbursed for their provision of services covered by Medicare. The District Court there dismissed plaintiffs' claims, holding that they were expressly precluded by 42 U.S.C. § 1395w-4, which states that "there shall be no administrative or judicial review under section 1395ff of this title or otherwise of— . . . (B) the determination of relative values and relative value units under subsection (c) of this section. . . ." *American Society*, 279 F.3d at 452. On appeal, plaintiffs argued that their claims were not barred, claiming that they were not challenging the formula components, but rather mounting a "systemic challenge to the Secretary's interpretation of Congress's nondiscretionary instructions for establishing components of the physician fee schedule." *Id.* The Court rejected plaintiffs' attempt to end run the statutory provision foreclosing judicial review, noting that [i]t would be difficult for Congress to have written paragraph (B) in clearer terms prohibiting such a challenge." *Id.* at 453.

Plaintiffs' challenge here is similarly foreclosed. Section 1395w-3(b)(10) reflects Congress's clear intent to insulate the creation, design, and operation of competitive bidding programs from judicial scrutiny. Like the plaintiffs in *American Society*, Plaintiffs here also seek to evade the plain, unequivocal statutory language precluding judicial review by dressing up their

claim as a challenge to the Secretary's unlawful interpretation of a nondiscretionary statutory mandate. *Cf.* Compl. ¶ 53 ("Defendants were not authorized under the MMA to conduct competitive bidding for the provision of DMEPOS based on mode of delivery, and therefore, were not authorized to designate 'mail order diabetic supplies' as an item for competitive bidding."). Notwithstanding the gloss Plaintiffs put on their challenge, it remains a challenge to the Secretary's design and implementation of the DMEPOS competitive bidding program, and is therefore barred by § 1395w-3(b)(10). In particular, Plaintiffs' claims are expressly foreclosed by two separate, independently operative provisions of the MMA — §§ 1395w-3(b)(10)(D) and (E).

### A.    The Secretary's Phased-In Implementation of Competitive Bidding Programs is Not Reviewable.

Plaintiffs' Complaint is an impermissible challenge to the Secretary's "phased-in implementation" of competitive bidding programs. 42 U.S.C. § 1395w-3(b)(10)(D). Plaintiffs have no quarrel with the Secretary's decision to regulate mail order DMEPOS suppliers. Rather, they complain that the Secretary has not also required storefront providers of diabetic suppliers to participate in competitive bidding. But just because Plaintiffs would like a segment of their competitors to share in their (wholly speculative, and as yet unrealized) "harm" stemming from the Secretary's implementation of the program does not mean that they have a cognizable claim for relief. To the contrary, Congress expressly granted the Secretary the authority to determine how the competitive bidding program would be implemented, stating that the Secretary may require competitive bidding "first among the highest cost and highest volume items and services or those items and services that the Secretary determines have the largest savings potential." 42 U.S.C. § 1395w-3(a)(1)(B)(ii). HHS data indicated that "over 60 percent of Medicare expenditures for diabetic suppliers are for items furnished by nationwide mail order suppliers."

72 Fed. Reg. 17992, 18018; *see also* Kaiser Decl. ¶ 4.  Given this, it makes perfect economic

sense for the Secretary to prioritize implementing competitive bidding for mail order diabetic

supplies first above other modes of delivery of diabetic supplies.  Relatedly, it is obvious that the

cost structure of mail-order suppliers and storefront suppliers are not equivalent, as only the latter

have to absorb the cost of maintaining and operating a physical store.

 While Plaintiffs apparently would have implemented the competitive program differently,

it is not their prerogative to second-guess the Secretary's determination.  There is no statutory

requirement that the Secretary implement competitive bidding programs in a particular way;

rather, that determination is committed to the Secretary's unreviewable discretion.  *See* 42 U.S.C.

§ 1395w-3(b)(10)(D).  As the attached declaration makes clear, the implementation of

competitive bidding programs remains in its earliest phases.  At this point, the Secretary has not

determined whether to require competitive bidding among storefront DMEPOS suppliers, or

whether such suppliers should be granted an exemption.  *See* Kaiser Decl. at ¶ 5; *see also* §

1395w-3(a)(1)(3)(B) (authorizing Secretary to exempt from competitive bidding items and

services for which the expected cost savings would be low).  Thus, Plaintiffs' challenge to the

Secretary's implementation of competitive bidding programs for diabetic supplies is foreclosed.

 **B.** **Plaintiffs' Challenge to the Secretary's Designation of Items Subject to Competitive Bidding is Not Reviewable.**

 Plaintiffs' claims are also foreclosed by § 1395w-3(b)(10)(E), which precludes judicial

review of the Secretary's "selection of items and services for competitive acquisition."  Again,

Plaintiffs do not allege that the items the Secretary designated as diabetic supplies are

misclassified in any way, or even that diabetic supplies are not "items and services" appropriate

for competitive bidding under the MMA.  Accordingly, Plaintiffs' challenge to competitive

bidding program is also foreclosed by § 1395w-3(b)(10)(E).  For all of these reasons, this Court

lacks subject matter jurisdiction to adjudicate this dispute.

## II.    BECAUSE PLAINTIFFS HAVE SUFFERED NO ACTUAL INJURY, AND BECAUSE THE STATUTE IS NOT INTENDED TO REMEDY THE TYPE OF INJURY THEY MAY SUFFER AT SOME FUTURE DATE, PLAINTIFFS LACK STANDING TO SUE.

Quite apart from the fact that Plaintiffs' claims are foreclosed by statute, this Court also

lacks jurisdiction because Plaintiffs' alleged injuries are purely speculative and not imminent.

Even if Plaintiffs' alleged injuries were imminent, they would still lack prudential standing

because their interests fall outside the "zone of interests" the MMA seeks to protect.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases'

and 'controversies.'"  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  This requirement is "founded

in concern about the proper — and properly limited — role of the courts in a democratic society,"

*Warth v. Seldin*, 422 U.S. 490, 498 (1975), and "is built on a single basic idea — the idea of

separation of powers."  *Allen*, 468 U.S. at 752.   Without this requirement and related limitations,

"the courts would be called upon to decide abstract questions of wide public significance even

though other governmental institutions may be more competent to address the questions and even

though judicial intervention may be unnecessary to protect individual rights."  *Id.* at 500.

As part of the "case or controversy" requirement, Plaintiffs must have standing.  *Lujan*,

504 U.S. at 559-60; *see also Clinton v. City of New York*, 524 U.S. 417, 429 (1998).  "This

inquiry involves both constitutional limitations on federal-court jurisdiction and prudential

limitations on its exercise."  *Warth*, 422 U.S. at 498.

**A.    Plaintiffs Lack Constitutional Standing Because They Have Failed to Demonstrate That They Have Suffered an Actual or Imminent Injury.**

To meet the "irreducible constitutional minimum of standing," a plaintiff must demonstrate that he has suffered an "injury in fact" that is "fairly traceable" to the conduct of the defendant and which is "redressable by a favorable decision" of the court. *Lujan*, 504 U.S. at 560-61. The alleged injury must be concrete and particularized as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (threat of injury must be "real and immediate").

Here, Plaintiffs have not alleged injuries that are actual or imminent, nor could they. Rather, they speculate about potential injuries that might befall them once the DMEPOS competitive bidding program is implemented several months from now. This is not the stuff of which legal injury is made.

To begin with, it is not clear that Plaintiffs would suffer any injury (let alone a legally cognizable one) even once the DMEPOS competitive bidding program is implemented, as Plaintiffs' Complaint is silent about whether either of them submitted a bid. In any event, the winning bidders will not be selected for approximately three more months, in March 2008, and the competitive bidding program will not be implemented until July 2008 at the earliest. Thus, Plaintiffs seek a remedy for injuries that — if they occur at all — will not take place for at least seven months. Plaintiffs' contention that they are "immediately faced" with injury is therefore demonstrably false.[6] Compl. ¶ 4. In a materially identical case, another court has recently

_____

[6]This assertion was even more untrue when Plaintiffs filed their Complaint on July 20, 2007 — the relevant point in time for Article III standing purposes — given that the window for submitting bids had not even closed at that time. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as

dismissed a challenge to the DMEPOS competitive bidding program for lack of ripeness. *See Hewitt v. Leavitt*, 3:07-CV-1038-K, (N.D. Tex. Dec. 2, 2007). Because Plaintiffs' injuries in this case similarly fail to transcend conjecture, Plaintiffs have failed to show that they have suffered an actual or imminent legal injury.

### B.    Plaintiffs' Claims Will Not Ripen for at Least Seven Months, If Ever.

A related element of Article III's case or controversy requirement is that a dispute must be ripe for judicial consideration — that is, a controversy must have "matured sufficiently to warrant judicial intervention." *Warth*, 422 U.S. at 499 n.10. Conversely, a claim is "not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citations omitted). As stated previously, Plaintiffs' alleged injuries remain purely speculative at this point: No winning bidders have yet been selected, and the DMEPOS competitive bidding program will not go into effect until at least July 2008. What is more, it is far from clear that Plaintiffs will suffer injury even then, as it remains to be seen (i) whether Plaintiffs will be selected as winning bidders; and, if so (ii) how the amount of reimbursement to which Plaintiffs would be entitled compares to their rate of reimbursement prior to the implementation of competitive bidding. The answers to one or both of these questions may turn in whole or in part on the bids submitted by other DMEPOS suppliers, which have not yet been evaluated fully. Kaiser Decl. ¶ 5. Unless and until these various questions are resolved, Plaintiffs' claims will remain unripe and therefore unfit for judicial review.

---

of the time at which the plaintiff's complaint is filed.").

C.  **Plaintiffs Lack Prudential Standing Because They Have Failed to Demonstrate That Their Alleged Injuries Fall Within The Zone Of Interests Protected By The Statute.**

Apart from the fact that Plaintiffs cannot show that they have constitutional standing, they also lack prudential standing.  To satisfy the requirements of prudential standing, a plaintiff must show, *inter alia*, that the injury he alleges falls within the "zone of interests to be protected or regulated by the statute."  *Transmission Agency of Northern California v. FERC*, 495 F.3d 663, 670 (D.C. Cir. 2007).  The gravamen of Plaintiffs' Complaint is that, as mail-order providers of diabetic supplies, they will be at a competitive disadvantage to their storefront counterparts who are not required to participate in a competitive bidding program as a prerequisite for providing DMEPOS to Medicare beneficiaries.  *See* Compl. ¶ 5.

A supplier's ability to provide DMEPOS to Medicare beneficiaries at a price of the supplier's choosing is not within the "zone of interests protected by the law invoked."[7]  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. at 751); *see also Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 524-26 (1991) (where a plaintiff's interest in "maximizing its profits, apparently by avoiding competition with other manufacturers" would "be more likely to frustrate than to further statutory objectives," his interests are outside the statute's "zone of interests" and he therefore lacks prudential standing).  Congress enacted Section 302 of the MMA to counteract the waste, fraud, and abuse that Congress found to be present under the previous DMEPOS fee schedule payment method.

---

[7]  Although Congress has protected the interests of Medicare beneficiaries by statute, these interests do not include the right to receive benefits from any supplier of their choosing if the supplier does not meet the eligibility requirements of the statute and regulations.  *See infra*, at 18.

*See* H.R. Rep. No. 108-178 (II), at Title III § 302.  The statute is not intended to (nor does it)

guarantee DMEPOS suppliers an expected return on their business investments, as Plaintiffs

seem to think.  *Cf. Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979) ("We do not find in the

statute authorizing Medicare . . . any legislative intention to provide financial assistance to

providers of care for their own benefit.  Rather the statute is designed to aid the patients and

clients of such facilities . . . .").  Indeed, safeguarding suppliers' rates of return would be

precisely antithetical to the MMA's purpose of reducing Medicare's cost.

Perhaps sensing that their claims of anticipatory lost profits are quite distant from

Congress's stated concern about eliminating waste and fraud from Medicare, Plaintiffs also

allude to the MMA's concern for small suppliers.  *See* Compl. ¶ 6 (alleging that the DMEPOS

competitive bidding plan "threatens to exclude many mail order suppliers from Medicare, [and]

will necessarily limit beneficiaries' access to suppliers by reducing the number of mail order

suppliers eligible to furnish Medicare covered items").[8]  This, too, is insufficient to place

Plaintiffs within the MMA's zone of interest.

To begin with, Plaintiffs' assertion that the DMEPOS competitive bidding program will

---

[8]Plaintiffs, as suppliers of DMEPOS equipment, have no standing to assert claims on behalf of Medicare beneficiaries.  Apart from the fact that the purported injury to beneficiaries — the reduced number of suppliers — is necessarily speculative at this point, Plaintiffs, as DMEPOS suppliers, have no standing to assert the interests of Medicare beneficiaries.  "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation marks omitted).  A party may assert a claim on behalf of another only when, *inter alia*, "there is a hindrance to the possessor's ability to protect his own interests." *Id.* at 130 (internal quotations omitted).  In this case, there is not even an allegation — let alone evidence — that Medicare beneficiaries are somehow hindered in their ability to represent their own interests.  Thus, to the extent that Plaintiffs' standing is predicated on an alleged injury to Medicare beneficiaries, their claims must be dismissed.

"reduc[e] the number of mail order suppliers eligible to furnish Medicare covered items" is necessarily conclusory at this point.  Given (i) that the bidding process is confidential; and (ii) that HHS has not yet selected the first DMEPOS bid, Plaintiffs (or anyone else, for that matter) cannot know whether the implementation of competitive bidding will reduce the number of eligible mail order DMEPOS suppliers.  And even if Plaintiffs' have guessed correctly, and their speculation comes true at some indeterminate point in the future, so what?

The requirement that Plaintiffs submit a cost-competitive bid, like any qualifying criteria, has the potential to eliminate potential suppliers.  But this is no different from the safeguards required both by statute and HHS regulation to protect the quality of goods and services provided under the program.  *See* 42 U.S.C. § 1395w-3(b)(2)(A)(i) (prohibiting the Secretary from awarding a contract unless the entity "meets applicable quality standards"), § 1395m(a)(20) (requiring implementation of quality standards); 42 C.F.R. § 414.414(c) (requiring each supplier to "meet applicable quality standards developed by CMS" and to "be accredited by a CMS-approved accreditation organization" before being eligible to bid for a contract).  Surely these requirements price some would-be Medicare suppliers out of the market, but no one argues that these suppliers' inability to comply with quality standards somehow gives them a statutory cause of action.

And even if the implementation does "threaten[] to exclude many mail order suppliers from Medicare," Compl. ¶ 6, there is no reason to believe that Plaintiffs will be one of the unlucky ones.[9]  Plaintiffs do not allege that they have been unable to comply with any aspect of

---

[9]Plaintiffs have no standing to sue on behalf of other suppliers who may be harmed by the Secretary's implementation of a competitive bidding program, given that these suppliers are more than capable of asserting their own interests, and given that this is not a class action suit on

the requirements attendant to the competitive bidding program.  Their grumble, rather, is that they would prefer not to have to comply because they fear that the competitive bidding process will place downward pressure on their profit margins.  *See id.* at ¶ 5 (decrying competitive disadvantage mail order providers will face).  Stripped to its essentials, then, Plaintiffs' concern about the "deleterious impact" of the DMEPOS competitive bidding program is nothing more than a concern about their profitability.  *Id.* at ¶ 4.  As such, Plaintiffs' professed concern about small suppliers is insufficient to bring them within the MMA's zone of interests.

It is true that both the statute and HHS regulations take special care to ensure that small suppliers will be able to compete in the bidding process.  *See* 42 U.S.C. § 1395w-3(b)(2)(A)(ii) (requiring the Secretary to take into account small providers' needs in developing financial standards that must be met by small providers); § 1395w-3(6)(D) (requiring the Secretary to take appropriate steps to ensure that small suppliers are considered in the competitive bidding program); *see also* 42 C.F.R. § 414.414(g) (creating special rules for participation in the competitive bidding program by small suppliers, including setting a target number of small suppliers, and awarding contracts to small suppliers if their composite bids[10] are higher for each category of goods and services that are higher than the pivotal bid, if necessary).  Solicitude for

---

behalf of mail-order DMEPOS suppliers generally.  Moreover, it is not clear why Plaintiffs would be an appropriate representative of mail-order DMEPOS suppliers who may be excluded by the competitive bidding program, because, as competitors of these excluded suppliers, Plaintiffs stand to gain financially from the exclusion of their competitors.  For these reasons, Plaintiffs have no standing to sue on behalf of other suppliers who may be excluded from furnishing DMEPOS products to Medicare beneficiaries, let alone before such exclusion actually occurs.

[10]  A composite bid is "the sum of a supplier's weighted bids for all items within a product category for purposes of allowing a comparison across bidding suppliers."  42 C.F.R. § 414.200; *accord* Compl. ¶¶ 42-43.

small suppliers in the bidding process is one thing; safeguarding their rate of return is quite another.  Even assuming Plaintiffs qualify as small suppliers, there is nothing in their Complaint to suggest that they have been unable to participate in the competitive bidding process.  What is more, the evidence to date demonstrates that the competitive bidding process the Secretary implemented complies with these statutory and regulatory mandates.  The successful participation of small suppliers in the competitive bidding program was demonstrated during the program's test phase, when "three-quarters of the DMEPOS [contract] winners were small businesses and beneficiary satisfaction remained high."  *See* H.R. Rep. No. 108-178 (II), at Title III § 302.  Thus, Plaintiffs' assertion that they will suffer "irreparable harm" as a result of the competitive bidding program is belied by judicially noticeable facts.

## III.  PLAINTIFFS' CHALLENGE TO THE SECRETARY'S DECISION TO DISTINGUISH BETWEEN "ITEMS AND SERVICES" BY DELIVERY MODE FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

Casting about for a means to circumvent the MMA's prohibition of judicial review, Plaintiffs frame their Complaint as a challenge to the Secretary's decision to require competitive bidding for diabetic supplies purchased by mail, but not diabetic supplies purchased from a physical storefront.  Because the MMA does not give the Secretary the authority to differentiate between "items and services" by delivery method, Plaintiffs argue, the Secretary exceeded his statutory authority by requiring competitive bidding for diabetic supplies purchased by mail, but not for diabetic supplies purchased from a physical store.[11]  Thus, Plaintiffs seek to avoid the

---

[11]Even assuming *arguendo* that Plaintiffs are correct in this assertion, this argument has nothing to say about why their claims are not foreclosed from judicial review pursuant to § 1395w-3(b)(10)(D), nor does it in any way remedy the standing and ripeness defects from which Plaintiffs' Complaint suffers.

statutory language precluding judicial review of challenges to the Secretary's design and implementation of the competitive bidding program by challenging the Secretary's non-inclusion of mail-order DMEPOS supplies. This argument is untenable for several reasons.

First, and most importantly, the definition of "item" HHS adopted clearly permits the Secretary to distinguish between a given item by delivery mode. On May 1, 2006, HHS issued the proposed rule that would govern DMEPOS competitive bidding. The rule contained following proposed definition of "item":

> Item means one of the following products identified by a HCPCS code, . . . and *includes the services directly related to the furnishing of that product to the beneficiary*:
>
> (1) Durable medical equipment . . . . .

71 Fed. Reg. 25654, 25661 (emphasis added). This proposed definition responded to a 2004 GAO report recommending that HHS consider delivery mode when designing competitive bidding programs. *See id.* at 25669 ("In a September 2004 report (GAO-04-765), GAO recommended that we consider using mail delivery for items that can be provided directly to beneficiaries in the home as a way to implement a DMEPOS competitive bidding strategy."); *see also* 72 Fed. Reg. at 18018 (citing same). As this proposal suggests, HHS's definition of "item" was crafted to allow the agency to take into consideration the manner in which the beneficiary obtained a given product, as the "services directly related to the furnishing of [a] product" necessarily include the method by which the product reaches the beneficiary.

Other aspects of HHS's proposed rule made clear that it was considering distinguishing between DMEPOS items purchased by mail and DMEPOS items purchased from storefronts. In the proposed regulation, HHS stated:

> Our data shows that a significant percentage of certain items such as diabetic
> testing supplies (blood glucose test strips and lancets) are furnished to
> beneficiaries by national mail order suppliers.  Therefore, we propose to establish
> a nationwide or regional competitive bidding program . . . for the purpose of
> awarding contracts to suppliers to furnish these items across the nation or region
> to beneficiaries who elect to obtain them through the mail order outlet. . . .  *For
> items that are subject to a nationwide or regional mail order competitive bidding
> program, we propose that suppliers who furnish these same items in the local
> market and do not furnish them via mail order would not be required to
> participate in the national or regional mail order competitive bidding program.*

71 Fed. Reg. at 25669 (emphasis added).

And contrary to Plaintiffs' representations, Compl. ¶ 7, HHS expressly requested

comments on its proposed DMEPOS competitive bidding program.  *See id.*  ("In its September

2004 report (GAO-04-765), the GAO recommended that we consider using mail delivery for

items that can be provided directly to beneficiaries in the home as a way to implement a

DMEPOS competitive bidding strategy.  *We are asking for comments on our proposal to

implement this recommendation, as well as for comments on the types of items that would be

suitable for a mail order competitive bidding program.*  In addition, we are requesting public

comment on an alternative that would require replacement of all supplies such as test strips and

lancets for Medicare beneficiaries to be furnished by mail order suppliers under a nationwide or

regional mail order program.") (emphasis added).[12]  Thus, Plaintiffs' argument that they were not

afforded notice or the opportunity to comment on HHS's proposed distinction between mail order

and storefront DMEPOS suppliers is directly contradicted by the proposed rule.  Given this

---

[12] Following its issuance of the proposed rule, HHS accepted comments from the public
for 60 days.  The comment window for this rule extended from May 1, 2006 until 5 p.m. on June
30, 2006.  During this two month period, HHS received 2,129 comments in response to its
proposed rule, including 591 comments pertaining to "items" under the MMA.  The final rule
went into effect on June 11, 2007.  Kaiser Decl. ¶ 4.

notice, if Plaintiffs failed to submit a comment about HHS's proposal to consider delivery mode in implementing a competitive bidding program, they have waived their right to challenge HHS's determination to segment between DMEPOS items by delivery type (apart from the fact that such a challenge is barred by statute).[13] *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("It is well established that issues not raised in comments before the agency are waived and this Court will not consider them.").

The final definition of "item" HHS implemented underscores the Secretary's authority to distinguish between a given item by delivery mode. In response to numerous comments, HHS stated that "in this final rule, we are revising the definition of 'item' to indicate that although we will always identify the product by HCPCS code, we may combine several codes to form one competitively bid item *or specify a particular method by which the item is furnished*." 72 Fed. Reg. at 17998. This "method," the rule makes clear, refers to delivery mode, as the only example given refers to a competitive bidding program for mail-order products. *See id.* ("For example, if we were to include diabetic test strips in a mail-order competitive bidding program, we would identify the item by its HCPCS code *and indicate that the product is to be furnished only by mail*."). Further reinforcing the significance of delivery mode to the competitive bidding calculus, the final rule goes on to say that HHS has "revised the definition of 'item' to specify that an item for purposes of competitive bidding may be comprised of two or more products identified by different HCPCS codes and/or modifiers *and that these codes may be defined based on how a product is furnished (for example, by mail)*." *Id.* In view of these repeated references

---

[13]HHS remains in the process of evaluating whether either Plaintiff submitted a timely comment pertinent to this issue.

to delivery mode in both the proposed as well as the final rule, it is clear that the definition of "item" HHS implemented permits the Secretary to distinguish between DMEPOS products by delivery mode.

Second, Plaintiffs' proffered definition would lead to anomalous results. Their all-or-nothing interpretation of "items and services" essentially nullifies the Secretary's discretion under § 1395w-3(a)(1)(B)(ii), and renders irrelevant for regulation purposes the manner in which Medicare beneficiaries purchase a given item subject to the MMA. For example, assume that 99% of a given DMEPOS item is purchased by mail order, and just 1% is purchased from storefronts. By Plaintiffs' logic, the Secretary would either have to implement regulation of both channels of distribution simultaneously or not at all, notwithstanding any judgment by the Secretary of the expected costs and benefits of each initiative.

Third, Plaintiffs' interpretation of "items and services" also has the potential to nullify other provisions of the MMA pertaining to competitive bidding. For example, § 1395w-3(a)(1)(3)(B) states in pertinent part that "[i]n carrying out the programs under this section, the Secretary may exempt . . . "items and services for which the application of competitive acquisition is not likely to result in significant savings." This provision necessarily contemplates that the Secretary will exercise his judgment about the expected costs and benefits of implementing competitive bidding programs, and prioritize his resources accordingly. Notwithstanding the flexibility Congress clearly intended to grant the Secretary, Plaintiffs urge a wooden interpretation of "items and services" that threatens to eliminate that discretion. In the hypothetical above, for instance, Plaintiffs' proffered interpretation would forbid the Secretary from implementing a competitive bidding program for a given item purchased by mail order

unless and until it also implemented such a program for storefront purchases of that item.[14]  *Cf. Amgen*, 357 F.3d at 115-16 (recognizing that plaintiff's proffered interpretation of the statute would nullify the discretion Congress expressly vested in the Secretary by statute).  This would contravene not only Congress's express intent, but also basic canons of statutory interpretation. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotations omitted).  For all of these reasons, Plaintiffs' challenge to the DMEPOS competitive bidding program is foreclosed.

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be granted, and Plaintiffs' suit should be dismissed.


Dated  January 11, 2008
      Washington, D.C.        Respectfully submitted,

                        JEFFREY BUCHOLTZ
                        Acting Assistant Attorney General
                        SHEILA M. LIEBER
                        Deputy Director
                        United States Department of Justice
                        Civil Division, Federal Programs Branch


                        _____/s/_____
                        C. LEE REEVES,
                        Trial Attorney

---

[14]To be sure, the Secretary would not have to implement a competitive bidding program for storefront suppliers at the same time as mail order suppliers were he to grant storefront suppliers an exemption pursuant to § 1395w-3(a)(1)(3)(B).  The Secretary remains in the process of evaluating whether to exercise his discretion to grant such an exemption to storefront providers of diabetic supplies, and need not do so on Plaintiffs' preferred timetable.  *See* Kaiser Decl. ¶ 5.

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7109
Washington, D.C.  20530
Tel: (202) 514-4805
Fax: (202) 616-8470

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAROLINA MEDICAL SALES, INC., et
al.,

      Plaintiffs,

  v.

MICHAEL O. LEAVITT, Secretary of the
Department of Health and Human Services,
et al.,

      Defendants.

Civil Action No. 1:07-cv-01298

## CERTIFICATE OF SERVICE

      Pursuant to Local Rule 5.1(d), I hereby certify that on January 11, 2008, I served Defendants' Motion to Dismiss on the Plaintiffs via the Court's ECF system.


_____/s/_____
C. LEE REEVES

## DECLARATION OF JOEL E. KAISER

Joel E. Kaiser, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the Deputy Director for the Division of Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") Policy in the Centers for Medicare & Medicaid Services ("CMS"). CMS is the federal agency within the United States Department of Health and Human Services ("HHS") responsible for administering the Medicare and Medicaid programs. This division is responsible for implementing the DMEPOS competitive bidding program. As the Deputy Director, I am responsible for managing the development and implementation of the DMEPOS competitive bidding program as well as the standard payment rules for DMEPOS items and services.

2. I graduated from the Pennsylvania State University in 1986 with a Bachelor of Arts in Public Service. I received a Master of Public Administration from Pennsylvania State University in 1988. I began working at CMS in November of 1988, at the time when Medicare's payment methodology for DMEPOS was converting from reasonable charges to fee schedules. I have worked for over 19 years on DMEPOS payment, coding, and scope-of-benefit issues. I have been a technical advisor and agency focal point for DMEPOS payment issues for many years.

3. I am familiar with the subject matter of the above-captioned lawsuit, which involves the implementation of Section 302(b)(1) of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. 108-173, 117 Stat. 2066, 42 U.S.C. § 1395w-3, regarding the competitive bidding program. The statements made in this Declaration are based on my personal knowledge, information contained in agency files, and

information furnished to me by CMS staff.

4. On May 1, 2006, HHS issued the proposed rule on the competitive bidding program

for DMEPOS. This proposed rule contained the following definition of item:

> Item means one of the following products identified by a HCPCS code, . . . , and
> *includes the services directly related to the furnishing of that product to the
> beneficiary*:
>
> (1) Durable medical equipment . . . . .

71 Fed. Reg. § 25654, 25661.

This proposed definition responded to a 2004 GAO report recommending that HHS consider

delivery mode when designing competitive bidding programs. *See id.* at 25669 ("In a September

2004 report (GAO-04-765), GAO recommended that we consider using mail delivery for items

that can be provided directly to beneficiaries in the home as a way to implement a DMEPOS

competitive bidding strategy.")

HHS solicited comments on its proposal to implement GAO's recommendation, as well

as comments on the types of items that would be suitable for a mail order competitive bidding

program. See 71 Fed. Reg. § 25654, 25669.

HHS accepted public comments on the proposed rule for 60 days, or until June 30, 2006.

During this period of time, HHS received 2,129 comments on the proposed rule. Of those

comments, 591 pertained specifically to the "items and services" governed by the MMA. HHS

published the final rule on the DMEPOS competitive bidding program on April 10, 2007. The

final rule went into effect on June 11, 2007.

5. The bidding period for the DMEPOS competitive bidding program began on May 15,

2007 and closed on September 25, 2007. CMS is currently evaluating the bids submitted during

this bidding window. The implementation of the competitive bidding program is expected to

begin in July 2008. HHS intends to phase in the implementation of competitive bidding in multiple stages. Mail-order diabetic supplies were among the items selected for the first stage of bidding because HHS data indicated that "over 60 percent of Medicare expenditures for diabetic suppliers are for items furnished by nationwide mail order suppliers." 72 Fed. Reg. § 17992, 18018. The implementation of the competitive bidding program is in its initial stages and remains ongoing. HHS must eventually either phase in competitive bidding for storefront suppliers of diabetic supplies or use its authority to exempt these items from the program. No decision has yet been made regarding when supplies, other than mail-order diabetic supplies, might be phased into the competitive bidding program.

Dated:       January 10, 2008

             Baltimore, Maryland


                                        JOEL E. KAISER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLINA MEDICAL SALES, INC., et al., <br><br>        Plaintiffs, <br><br>    v. <br><br> MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services, et al., <br><br>        Defendants. | Civil Action No. 1:07-cv-01298 |

## **[Proposed] ORDER**

Upon consideration of the Defendants' Motion to Dismiss, it is hereby ORDERED that

the motion is GRANTED and that Plaintiffs' Complaint is dismissed.


Dated: _____.



_____

UNITED STATES DISTRICT JUDGE