# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CAROLINA MEDICAL SALES, INC., et al.,    )

                 Plaintiffs,    )

       v.                  )     No. 1:07-cv-01298-RMU

LEAVITT, et al.,           )

                 Defendants.    )
_____)

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Frederick Robinson
D.C. Bar. No. 367223
Caroline M. Mew
D.C. Bar No. 467354
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 662-0200

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

      A.     Plaintiffs and Diabetes Care ..................................................................... 2

      B.     The Medicare Modernization Act ............................................................. 3

      C.     Competitive Acquisition Rulemaking ...................................................... 6

      D.     Competitive Bidding Program .................................................................. 8

ARGUMENT .................................................................................................................... 9

I.      STANDARD OF REVIEW ................................................................................ 9

II.     THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
       CHALLENGE TO THE SECRETARY'S UNAUTHORIZED SELECTION OF MAIL
       ORDER DIABETIC SUPPLIES AS AN ITEM FOR THE COMPETITIVE BIDDING
       PROGRAM ........................................................................................................ 10

      A.     The MMA Does Not Bar Judicial Review Of Plaintiffs' Challenge To The
             Competitive Bidding Program ............................................................... 10

      B.     The Court Has Jurisdiction Over Plaintiffs' Claim That The Secretary's
             Selection Of Mail Order Diabetic Supplies Is Invalid Based On Lack Of
             Statutory Authority ............................................................................... 13

      C.     The Court Has Jurisdiction Over Plaintiffs' Claim Pursuant to 42 U.S.C.
             § 1395hh ............................................................................................... 15

III.    PLAINTIFFS HAVE STANDING AND THIS CASE IS RIPE FOR JUDICIAL
       REVIEW ........................................................................................................... 17

      A.     Plaintiffs Have Article III Standing ...................................................... 17

      B.     This Case Is Ripe For Judicial Review ................................................... 21

      C.     Plaintiffs Have Prudential Standing ....................................................... 23

IV.    DEFENDANTS HAVE RAISED VALID CLAIMS FOR RELIEF BASED ON
       DEFENDANTS' UNLAWFUL SELECTION OF MAIL ORDER DIABETIC
       SUPPLIES AS AN ITEM FOR COMPETITIVE BIDDING ......................... 26

CONCLUSION ................................................................................................................ 32

# TABLE OF AUTHORITIES

**Page**

**CASES:**

\* *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ................................................................10, 21

\* *Aid Ass'n for Lutherans v. United States Postal Serv.*,
   321 F.3d 1166 (D.C. Cir. 2003) ................................................................13, 14, 30

*Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517 (1991) ...................25

*Allen v. Wright*, 468 U.S. 737 (1984) ...........................................................................19

\* *American Chiropractic Ass'n v. Leavitt*, 431 F.3d 812 (D.C. Cir. 2005) .....................................24

*American Lithotripsy Soc'y of America v. Thompson*, 215 F. Supp. 2d 23 (D.C. Cir. 2002)........23

*American Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902) .......................................13

*American Society of Cataract and Refractive Surgery v. Thompson*,
   279 F.3d 447 (7th Cir. 2002) ................................................................12

\* *Amgen, Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004)......................................12, 14, 15, 16, 23, 24

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150 (1970) ...................................10

\* *Bowen v. Michigan Academy of Family Phys.*, 476 U.S. 667 (1986) ...........................................10

\* *COMSAT Corp. v. FCC*, 114 F.3d 223 (D.C. Cir. 1997)...........................................................14

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .......................................16

*Clarke v. Securities Indus. Ass'n*, 479 U.S. 388 (1987)...........................................................24

\* *Clinton v. City of New York*, 524 U.S. 417 (1998)...............................................................19

\* *Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988) ...........................................................10, 14

\* *Defenders of Wildlife v. Kempthorne*, No. 04-1230, 2006 U.S. Dist. LEXIS 71137
   (D.D.C. Sept. 29, 2006) ................................................................20, 22

\* *Fin. Planning Assoc. v. SEC*, 482 F.3d 481 (D.C. Cir. 2007).....................................................18

*Green v. Cashman*, 605 F.2d 945 (6th Cir. 1979)...............................................................25

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ...........................................................................25

## TABLE OF AUTHORITIES – Continued

**Page**

**CASES:**

*Leedom v. Kyne*, 358 U.S. 184 (1958) ...................................................................14

*Liu v. Novak*, 509 F. Supp. 2d 1 (D.D.C. 2007)..............................................9, 10

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
    501 F. Supp. 2d 34 (D.D.C. 2007) ...................................................................9

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................................................19

\* *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .........................9, 17, 20

*Nat'l Ass'n of Postal Supervisors v. USPS*, 602 F.2d 420 (D.C. Cir. 1979)...........30, 31

\* *Nat'l Assoc. of Home Builders v. U.S. Army Corps of Engineers*,
    440 F.3d 459 (D.C. Cir. 2006) .................................................21, 22, 23

\* *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1 (D.C. Cir. 2005) ...................20

\* *Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839 (D.C. Cir. 2006)...........19

*Painter v. Shalala*, 97 F.3d 1351 (10th Cir. 1996) .......................................13

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ...............................................25

*Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002)...........20

*Texas v. United States*, 523 U.S. 296 (1998) ...............................................22

*Transmission Agency of Northern California v. FERC*, 495 F.3d 663 (D.C. Cir. 2007) ...........24

\* *Universal Health Servs. of McAllen, Inc. v. Sullivan*, 770 F. Supp. 704
    (D.D.C. 1991) ...................................................................11

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................19

**STATUTES:**

5 U.S.C. § 553....................................................................................20

28 U.S.C. § 1331................................................................................11

**TABLE OF AUTHORITIES – Continued**

**Page**

**STATUTES:**

42 U.S.C. § 1395hh.................................................................................15, 16, 20, 21, 30

42 U.S.C.A. § 1395w-3........................................................................... *passim*

42 U.S.C. § 1395m(a)(13).................................................................................3, 28

**REGULATIONS:**

42 C.F. R. § 414.402 ...................................................................................8

42 C.F.R. § 414.406 ...................................................................................6

42 C.F.R. § 414.412 ...................................................................................8

42 C.F.R. § 414.414 ...................................................................................8, 9, 10

**FEDERAL REGISTER:**

71 Fed. Reg. 25,654 (May 1, 2006) ...........................................................6, 30, 31, 32

72 Fed. Reg. 17,992 (Apr. 10, 2007) ...........................................................6, 8, 9, 31

## INTRODUCTION

This lawsuit challenges the unlawful actions of the defendants, acting in their official capacities on behalf of the Department of Health and Human Services ("HHS"), in establishing a program for competitive acquisition of competitively priced items and services ("competitive bidding program"), as required by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), 42 U.S.C.A § 1395w-3.  Plaintiffs' complaint targets fundamental and obvious legal errors made by defendants in implementing the competitive bidding program with respect to diabetic supplies.  Specifically, the complaint explains that, without statutory authority and in contravention of the procedural requirements of the Medicare Act and Administrative Procedure Act ("APA"), defendants selected "mail order diabetic supplies" as a product category for competitive bidding.  Defendants characterize plaintiffs' challenge as "extremely narrow."  Memorandum in Support of Defendants' Motion to Dismiss ("Def. Br.") at 6.  Whether the issues raised in this lawsuit are "narrow" or not is an irrelevant point – what matters is that the defendants' have acted outside their statutory authority and without observing the procedures required by law, all to plaintiffs' injury.

Defendants' motion to dismiss largely fails to appreciate or respond to the actual claims raised in this lawsuit.[1]  The procedural arguments raised in defendants' motion – that plaintiffs are statutorily foreclosed from judicial review, lack standing, and have asserted unripe claims – are unavailing.  Nothing in the language of the MMA blocks this Court's consideration of the

---

[1] Defendants' failure to fully appreciate or address the claims raised in plaintiffs' complaint perhaps can be attributed to the fact that large portions of defendants' brief were lifted, verbatim, from a motion to dismiss filed by HHS in response to another judicial challenge to the competitive bidding program, *Hewitt v. Leavitt*, No. 3:07-cv-1038 (N.D. Tex.).  It is surprising that defendants are relying so heavily on this prior briefing, when the claims at issue in the Texas lawsuit (constitutional issues of equal protection and due process violations) are not the same as the claims at issue in this lawsuit.  It also begs the question why defendants needed to request two extensions of time, totaling ninety days (in addition to the sixty days allowed by rule), to respond to plaintiffs' complaint, if they had the benefit of this prior briefing.

specific claims raised in this lawsuit, and, regardless of any statutory bar to judicial review, the Court must exercise jurisdiction to review and correct defendants' acts that exceeded their statutory authority in establishing the competitive bidding program. Plaintiffs, as entities subject to the defendants' unlawful competitive bidding program for mail order diabetic supplies, have standing to raise their claims, which are also ripe in light of the fact that the competitive bidding program has been well underway since May 15, 2007, before plaintiffs' complaint was filed. Defendants' argument that plaintiffs have failed to state a claim for which relief can be granted is equally without merit. Defendants fail to cite any language in the MMA that authorizes them to select items for competitive bidding based on their method of delivery, and mischaracterize their rulemaking procedure (or lack thereof) in establishing the competitive bidding program in a weak attempt to justify their failure to comply with the requirements of the Medicare Act and APA.

For the reasons discussed more fully below, defendants' motion to dismiss should be denied.

## FACTUAL BACKGROUND

### A.    Plaintiffs and Diabetes Care

Plaintiffs Carolina Medical Sales, Inc. ("CMS") and American Health Systems ("AHS") (collectively, "plaintiffs") are suppliers of diabetic testing supplies who serve their patients primarily or nearly exclusively by mail. Complaint ¶¶ 4, 12, 13. Diabetes is a serious illness that afflicts millions of Americans. *See id.* ¶ 16. The disease can be effectively managed, however, through patient education and compliance with physician-prescribed blood glucose testing regimens. *See id.* ¶ 17.

Plaintiffs specialize in the care of diabetes. *See id.* ¶ 19. Through consolidated operations, knowledgeable employees, regular client contact, and longstanding client

relationships, plaintiffs – like other mail order suppliers – are able to provide unparalleled service to Medicare beneficiaries and help such individuals remain compliant with their physician-prescribed testing regimens, and thereby play a critical role in helping beneficiaries avoid common complications from diabetes. *See id.* ¶ 19. As mail order suppliers, plaintiffs often serve the most vulnerable of diabetes patients, many of whom have the most severe illnesses and are home-bound or unable to purchase their testing supplies from store front locations. *See id.* ¶ 20.

**B.    The Medicare Modernization Act**

In 2003, Congress enacted the Medicare Modernization Act ("MMA"). Section 1847 of the MMA, now codified as revised at 42 U.S.C.A. § 1395w-3, provides for the competitive acquisition of certain items and services furnished under the Medicare program. This section directs the Secretary to "establish and implement programs under which competitive acquisition areas are established throughout the United States for contract award purposes for the furnishing under this part of competitively priced items and services . . . ." *See* 42 U.S.C.A. § 1395w-3(a)(1)(A). Items and services that were intended by Congress to be covered under the competitive bidding program include (1) durable medical equipment and medical supplies, (2) other equipment and supplies, and (3) off-the-shelf orthotics. *See id.* § 1395w-3(a)(2). Diabetic testing supplies are included in the category of "durable medical equipment and medical supplies." Section 1847(a)(2) of the Act defines the items and services that are subject to the competitive bidding program to include durable medical equipment and supplies that are covered items as defined in section 1834(a)(13) of the Act (42 U.S.C. § 1395m(a)(13)). 42 U.S.C.A. § 1395w-3(a)(2)(A). Section 1834(a) of the Act does not distinguish between durable medical equipment and supplies provided through the mail versus durable medical equipment and

supplies provided through retail stores for payment purposes, nor do any regulations established by the Secretary under section 1834(a).

Congress mandated that the competitive bidding program be phased in over time, providing competitive bidding to the ten largest metropolitan statistical areas ("MSAs") in 2007, 80 of the largest MSAs in 2009, and additional areas thereafter. *See* 42 U.S.C.A. § 1395w-3(a)(1)(B). The Secretary was instructed to substitute the payment basis established under the competitive bidding program for the payment otherwise available under the Medicare Program for the particular items or services in the applicable competitive bidding areas. *See id.* 1395w-3(a)(6). The single payment amount established under the competitive bidding program will be lower than the current Medicare payment amount for the same item or service. Specifically, the Secretary is not allowed to award a contract to any entity under the competitive bidding program unless the Secretary expects the total amounts to be paid to contractors in a competitive acquisition area to be less than the total amounts that would otherwise be paid. 42 U.S.C.A. § 1395w-3(b)(2)(A)(iii).

Congress gave the Secretary limited, explicit authority to make certain exemptions from the competitive bidding program. *See id.* § 1395w-3(a)(3). First, the Secretary may exempt "rural areas and areas with low population density within urban areas that are not competitive, unless there is a significant national market through mail order for a particular item or service." *See id.* § 1395w-3(a)(3)(A). Second, the Secretary may exempt "items and services for which the application of competitive acquisition is not likely to result in significant savings." *See id.* § 1395w-3(a)(3)(B). Notably absent from the statute is any grant of authority to the Secretary to exempt items from competitive bidding based upon their mode of delivery.

- 4 -

Indeed, Congress explicitly instructed the Secretary regarding the limited circumstances when mode of delivery was to be taken into account in establishing the competitive bidding program. First, as noted above, Congress allowed the Secretary to exempt rural areas and areas with low population density within urban areas that are not competitive from the competitive acquisition program, unless there is a significant national market through mail order for a particular item or service. 42 U.S.C.A. § 1395w-3(a)(3)(A). Second, Congress allowed the Secretary to establish a process whereby a physician could prescribe a particular brand or mode of delivery of an item or service within a particular HCPCS code, if the physician determined that use of the particular item or service would avoid an adverse medical outcome for an individual, as determined by the Secretary. Significantly, Congress prohibited the Secretary from providing a different payment amount for the prescription item than what would be otherwise applicable for the item or service. 42 U.S.C.A. § 1395w-3(a)(5)(A)-(B). Third, Congress required the Secretary to conduct a demonstration project on the application of the competitive acquisition program to clinical diagnostic laboratory tests furnished by entities that did not have a face-to-face encounter with the patient, 42 U.S.C.A. § 1395w-3(e)(1), *i.e.*, clinical diagnostic laboratory tests performed on specimens received through the mail or through other means of delivery.

A demonstration project was conducted to "test competitive bidding as a way for Medicare to price and pay for Part B services other than physician services." *See id.* The Secretary held three competitive bidding demonstrations for durable medical equipment, prosthetics, orthotics and supplies in Florida and Texas. *See id.* The demonstration projects, which Congress deemed a success, *see id.*, included neither a demonstration of competitive

bidding for "mail order" durable medical equipment, prosthetics, orthotics and supplies nor a demonstration of competitive bidding for diabetes supplies.

**C.    Competitive Acquisition Rulemaking**

On May 1, 2006, CMS published a proposed rule in the Federal Register to implement a competitive bidding program for certain Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS").  *See* 71 Fed. Reg. 25,654.  In the preamble to the proposed rule, CMS contemplated conducting competitive bidding in each competitive acquisition area based on items grouped into product categories.  *See id.* at 25,670.  CMS did not identify any product categories for competitive bidding in the proposed rule.  Nor did CMS signal at any point that it was contemplating defining product categories for the first round of the competitive bidding program by mode of delivery (e.g. mail order supply as opposed to retail store locations).  Although CMS did propose a nationwide or regional mail order competitive bidding program that may take effect on or after January 1, 2010, *see id.* at 25,669, the agency did not indicate either that it was planning to institute such a program with a selected category of items or services (*e.g.* diabetic testing supplies) or that it was considering any type of mail order program for individual competitive bidding areas prior to 2010.

On April 10, 2007, CMS published the final rule for the competitive acquisition program.  *See* 72 Fed. Reg. 17,992 (Apr. 10, 2007).  Once again, the text of the final rule failed to identify the product categories that CMS intended to be subject to the competitive bidding program.  *See id.* at 18,084-18,090 (reprinting text of final rule to be published in C.F.R.).  Instead, the final rule indicated that CMS would designate "the items that are included in a competitive bidding program through program instructions or by other means."  *See* 42 C.F.R. § 414.406(d), as published in 72 Fed. Reg. at 18,085.  The final rule also failed to identify the criteria that would be used for selection of the competitively bid items.  *See id.*

Ultimately, CMS purported to select product categories "based on criteria outlined in the final rule" and listed the product categories on a website: "www.dmecompetitivebid.com." Among the product categories selected were:

(1)     Oxygen Supplies and Equipment;

(2)     Standard Power Wheelchairs, Scooters, and Related Accessories;

(3)     Complex Rehabilitative Power Wheelchairs and Related Accessories;

(4)     ***Mail-Order Diabetic Supplies***;

(5)     Enteral Nutrients, Equipment, and Supplies;

(6)     Continuous Positive Airway Pressure (CPAP) Devices, Respiratory Assist Devices (RADs), and Related Supplies and Accessories;

(7)     Hospital Beds and Related Accessories;

(8)     Negative Pressure Wound Therapy (NPWT) Pumps and Related Supplies and Accessories;

(9)     Walkers and Related Supplies; and,

(10)    Support Surfaces (group 2 mattresses and overlays) (in Miami and San Juan only).

*See* www.dmecompetitivebid.com/cbic/CBIC.nsf/(subpages)/CBICSuppliersProduct+Categories (last visited on January 28, 2007) (emphasis added).

The "Mail Order Diabetic Supplies" product category was the only category of products selected by CMS defined by mode of delivery rather than simply the type of item or service that comprise the category. The "Mail Order Diabetic Supplies" category includes the following items: (1) alkaline batteries; (2) J-cell batteries; (3) lithium batteries; (4) silver oxide batteries; (5) blood glucose/reagent strips; (6) calibrator solution/chips; (7) lancet devices (each); and (8) lancet devices (per box). The eight items that comprise the Mail Order Diabetic Supplies product category are items that can be purchased by Medicare beneficiaries from both store front locations and mail order suppliers.

D.     **Competitive Bidding Program**

With limited exceptions, in order for a supplier to receive payment for items furnished to beneficiaries who maintain a permanent residence in or who are visiting a competitive bidding area, the supplier of an item or service listed in a selected product category must submit a bid to furnish those items and be awarded a contract by CMS.  42 C.F.R. § 414.412(a).  The supplier must submit a separate bid for each item in a product category that the supplier is seeking to furnish under the competitive bidding program.  42 C.F.R. § 414.412(d).  A supplier's bid must include all costs related to the furnishing of the item, including all services related to the furnishing of the item, and cannot exceed the item's 2007 fee schedule amount.  *See* 42 C.F.R. § 414.412(b)(2), (c) (as published in 72 Fed. Reg. at 18,088).

After a supplier submits its bids for items within the designated product category, the bid for each individual item is multiplied by a number assigned to an item based on its beneficiary utilization rate, using national data, when compared to other items in the same product category.  72 Fed. Reg. 18,041 (April 10, 2007) (Preamble to Final Rule).  These weighted bids are then added together in order to determine the supplier's composite bid for the product category.  *Id.*  CMS uses the composite bid to compare all of the suppliers' bids submitted for an entire product category in the competitive bidding area.  *Id.*  After determining each supplier's composite bid, CMS will determine the pivotal bid, which CMS defines as the lowest composite bid that includes a sufficient number of suppliers to meet beneficiary demand for the items in that product category.  42 C.F.R. §§ 414.414(e) and 414.402.  All suppliers eligible for selection whose composite bid for the product category is at or below the pivotal bid will be selected as winning bidders and will be offered a chance to become contract suppliers for the product category.  *See* 42 C.F.R. § 414.414(e)(6).  CMS is required to award at least five contracts, if there are five winning bidders.  42 C.F.R. § 414.414(h)(1).  If there are fewer than five winning

bidders, CMS will award at least two contracts, provided the winning bidders possess sufficient capacity to satisfy expected beneficiary demand for the product category.    42 C.F.R. § 414.414(h)(2).

After completion of the competitive bidding process and the award of contracts to winning suppliers, if a beneficiary in a competitive acquisition area chooses to obtain diabetic supplies by mail from the "mail order diabetic supplies" product category, the beneficiary must obtain the supplies from an entity that has been awarded a contract by CMS in order to receive Medicare reimbursement for those products.    Thus, entities that do not bid or whose bids are unsuccessful will be locked out as suppliers in any competitive acquisition area.    *See* 42 U.S.C.A. § 1395w-3(b)(6)(A).    The competitive bidding window opened on May 15, 2007, and closed on September 25, 2007.    *See* Decl. of Joel E. Kaiser ¶ 5 (attachment to Def. Br.). Winning suppliers are expected to be announced in March 2008.

## ARGUMENT

## I.    STANDARD OF REVIEW

Defendants correctly note that plaintiffs bear the burden of establishing the Court's subject matter jurisdiction in this action.    *See* Def. Br. at 7.    But "[i]n evaluating a motion to dismiss for lack of subject-matter jurisdiction, the court must accept the complaint's well-pled factual allegations as true and construe all reasonable inferences in the plaintiff's favor."    *Liu v. Novak*, 509 F. Supp. 2d 1, 3 (D.D.C. 2007) (citation omitted).    "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'"    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted); *see also In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 501 F. Supp. 2d 34, 42 (D.D.C. 2007) (same; discussing burden of proving standing) (citation omitted).    Moreover, as

discussed below, *see infra* at 10-11, it is ***defendants'*** "heavy burden" to show that subject matter jurisdiction is defeated by statute.

As for defendants' motion to dismiss for failure to state a claim, the Court must "accept as true all factual allegations in the complaint, and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged." *Liu*, 509 F. Supp. 2d at 4 (citation omitted).

**II.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CHALLENGE TO THE SECRETARY'S UNAUTHORIZED SELECTION OF MAIL ORDER DIABETIC SUPPLIES AS AN ITEM FOR THE COMPETITIVE BIDDING PROGRAM**

**A.    The MMA Does Not Bar Judicial Review Of Plaintiffs' Challenge To The Competitive Bidding Program**

The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1361. There is a "strong presumption that Congress intends judicial review of administrative action[,]" *Bowen v. Michigan Academy of Family Phys.*, 476 U.S. 667, 670 (1986), and review should be allowed absent "'clear and convincing evidence' of a contrary legislative intent." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (citation omitted); *see also, e.g., Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 157 (1970) ("There is no presumption against judicial review and in favor of administrative absolutism, . . . unless that purpose is fairly discernible in the statutory scheme.") (internal citation and citation omitted).

Defendants argue that the MMA expressly bars plaintiffs' judicial challenge to their unlawful selection of mail order diabetic supplies as an item for competitive bidding. *See* Def. Br. at 8-13. It is defendants' heavy burden to show that Congress intended to bar judicial review of the claims asserted by plaintiffs in this lawsuit. *See Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988) (discussing the Secretary's "'heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review of his decision.'")

(citations omitted); *Universal Health Servs. of McAllen, Inc. v. Sullivan*, 770 F. Supp. 704, 710 (D.D.C. 1991) ("The party seeking to read a legislative scheme to preclude review bears the burden of demonstrating Congress' intent to do so.") (citations omitted), *aff'd mem.*, 978 F.2d 745 (D.C. Cir. 1992). Defendants have failed to satisfy their heavy burden to show that judicial review is barred here.

As an initial matter, although Defendants argue otherwise, *see* Def. Br. at 10-11, the MMA does not provide the Secretary with unfettered discretion in establishing the competitive bidding program. The statute provides specific guidelines and standards for how the program is to be established. And although the statute provides the Secretary freedom from judicial and administrative review of certain explicitly defined actions and decisions, it does not completely relieve the Secretary from all aspects of judicial review. *See* 42 U.S.C.A. § 1395w-3(b)(10). Defendants point to two provisions of the MMA that purportedly foreclose jurisdiction in this case – 42 U.S.C.A. §§ 1395w-3(b)(10)(D) and (E). Def. Br. at 11. Neither section, however, applies to foreclose the claims raised by plaintiffs in this lawsuit.

Section 1395w-3(b)(10)(D) precludes administrative and judicial review of "the phased-in implementation under subsection (a)(1)(B)[.]" This "phased-in implementation" subsection of the statute addresses the process of phasing in the competitive bidding program in competitive acquisition areas over time, *i.e.*, in "(I) 10 of the largest metropolitan statistical areas in 2007; (II) 80 of the largest metropolitan statistical areas in 2009; and (III) additional areas after 2009[.]" 42 U.S.C.A. § 1395w-3(a)(1)(B)(i). Plaintiffs are not challenging the Secretary's choice of metropolitan statistical areas, so this particular statutory bar is not relevant. Subsection (a)(1)(B) of the statute also provides that the competitive bidding program "may be phased in first among the highest cost and highest volume items and services or those items and services that the

- 11 -

Secretary determines have the largest savings potential."  42 U.S.C.A. § 1395w-3(a)(1)(B)(ii).

Plaintiffs are not challenging the Secretary's decision to phase in mail order diabetic supplies

*first* to the competitive bidding program.  Rather, plaintiffs' claim is that the Secretary had no

authority under the statute to treat "mail order" diabetic suppliers differently than store front

suppliers at any time.  Plaintiffs simply are not challenging the Secretary's decision as to *when* to

make mail order diabetic suppliers subject to the competitive bidding program or *where* to do

so.[2]  Section 1395w-3(b)(10)(D) therefore does not bar plaintiffs' complaint.

Section 1395w-3(b)(10)(E) precludes administrative and judicial review of the

Secretary's "selection of items and services for competitive acquisition under subsection

(a)(2)[.]"  Subsection (a)(2) provides that the following types of items and services are

potentially subject to the competitive bidding program:  durable medical equipment and medical

supplies; other equipment and supplies; and off-the-shelf orthotics.  Plaintiffs do not challenge

the Secretary's decision to include items of durable medical equipment and medical supplies in

the competitive bidding program.  Defendants recognize as much.  *See* Def. Br. at 12 ("Plaintiffs

do not allege that the items the Secretary designated as diabetic supplies are misclassified in any

way, or even that diabetic supplies are not 'items and services' appropriate for competitive

bidding under the MMA.").  Rather, plaintiffs are challenging the Secretary's unilateral decision,

made without proper notice or Congressional authority, to split the diabetic supplies category

based on method of delivery.  Section 1395w-3(b)(10)(E) does not bar plaintiffs' complaint.

Defendants rely on *Amgen, Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004), and *American*

*Society of Cataract and Refractive Surgery v. Thompson*, 279 F.3d 447 (7th Cir. 2002), in

arguing that the bar to judicial review in the MMA blocks plaintiffs' challenge here.  *See* Def.

---

[2] The Secretary's self-serving statements about whether store front suppliers will ever be subject
to the competitive bidding program, *see* Def. Br. at 12, are therefore irrelevant.

Br. at 9-10.  But the question whether statutory language provides "clear and convincing" evidence that Congress intended to preclude judicial review is a fact-specific inquiry that depends on the specific statutory language at issue and the specific claims asserted.  The *Amgen* and *American Society* courts reviewed a different provision of the Medicare Act, and their analysis is therefore inapplicable here.  Moreover, the *Amgen* court presumed that Congress was concerned about "piecemeal review of individual payment determinations" in the context of the challenge raised in that lawsuit.  357 F.3d at 112.  In contrast here, Plaintiffs' challenge to the Secretary's actions is applicable to a broad class of Medicare providers and does not present the same concerns.  For the same reason, *Painter v. Shalala*, 97 F.3d 1351 (10th Cir. 1996), the other case cited by Defendants, is also inapposite.  In *Painter*, the court found that the statutory language at issue clearly barred the plaintiffs' claims.  Here, in contrast, the statutory language does not clearly and convincingly evidence intent by Congress to bar the claims raised by plaintiffs in this lawsuit.  Defendants have failed to meet their heavy burden to show that judicial review is foreclosed by the MMA.

**B.    The Court Has Jurisdiction Over Plaintiffs' Claim That The Secretary's Selection Of Mail Order Diabetic Supplies Is Invalid Based On Lack Of Statutory Authority**

Regardless of how the Court interprets or applies the language of 42 U.S.C.A. § 1395w-3(b)(10)(D) or (E), the Court has subject matter jurisdiction to review the Secretary's unauthorized selection of mail order diabetic supplies as an item for competitive bidding.  "[T]he case law in this circuit is clear that judicial review is available when an agency acts *ultra vires*." *Aid Ass'n for Lutherans v. United States Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003) (citation omitted); *see also, e.g., American Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902) ("[T]he courts … must have power in a proper proceeding to grant relief.  Otherwise, the individual is left to the absolutely uncontrolled and arbitrary action of a public and

administrative officer, whose action is unauthorized by any law and is in violation of the rights of the individual."); *Amgen*, 357 F.3d at 112 ("Congress rarely intends to foreclose review of action exceeding agency authority . . . .") (citing *Leedom v. Kyne*, 358 U.S. 184, 190 (1958); *Aid Ass'n,* 321 F.3d at 1173; *Dart*, 848 F.2d at 221); *COMSAT Corp. v. FCC*, 114 F.3d 223, 224 (D.C. Cir. 1997) (statutory bar to judicial review did not preclude review where the FCC acted outside the scope of its authority).

In *Amgen*, the D.C. Circuit explained that statutory language precluding judicial review of the Secretary's determinations "extends no further than the Secretary's statutory authority to make them," 357 F.3d at 112, and therefore reviewed the Secretary's actions to determine whether they were authorized under the statute, notwithstanding the statute's bar to judicial review. *See id.* at 113. In such a case, "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action, and the court must address the merits to the extent necessary to determine whether the challenged agency action falls within the scope of the preclusion on review." *Id.*; *see also COMSAT Corp.*, 114 F.3d at 227 (finding jurisdiction to review Commission's action where it also found that Commission acted outside the scope of its statutory mandate).

As explained at pages 26-30, *infra*, the Secretary did not have the statutory authority to select items and services for competitive bidding based on their mode of delivery, and the Court therefore has jurisdiction over Plaintiffs' challenge to the Secretary's selection of "mail order diabetic supplies" as items for the competitive bidding program. Any statutory "preclusion of

review would not apply to shield the Secretary's unauthorized action." *Amgen,* 357 F.3d at 114.[3] The Court has jurisdiction to review – and correct – the Secretary's unauthorized act.

### C.     The Court Has Jurisdiction Over Plaintiffs' Claim Pursuant to 42 U.S.C. § 1395hh

The Court has jurisdiction over Plaintiffs' claim that the Secretary's selection of mail order diabetic supplies is invalid and ineffective because it was not promulgated by regulation as required by 42 U.S.C. § 1395hh(a).  Section 1395hh(a)(1) mandates that "[t]he Secretary **shall** prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this title . . . ." Section 1395hh(a)(2) requires that "[n]o rule, requirement, or other statement of policy . . .  that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of . . . entities . . . to furnish . . . services or benefits under this title shall take effect unless it is promulgated by the Secretary by regulation . . . ."  (emphasis added).

Defendants have changed a substantive legal standard governing the scope of benefits, the payment for services, and the eligibility of entities to furnish services or benefits through their selection of mail order diabetic supplies as an item for the competitive bidding program as opposed to the existing Medicare payment system.  Defendants, however, did not establish the items and services for competitive bidding by regulation – rather, they simply listed the items

---

[3] Footnote 11 of defendants' brief reveals that they do not understand this legal principle, although they relied heavily on the *Amgen* case in their motion to dismiss.  Defendants state: "Even assuming *arguendo* that Plaintiffs are correct in this assertion [that the Secretary exceeded his statutory authority by requiring competitive bidding for diabetic supplies purchased by mail, but not for diabetic supplies purchased from a physical store], this argument has nothing to say about why their claims are not foreclosed from judicial review pursuant to § 1395w-3(b)(10)(D) . . . . ."  *Amgen* and the other cases cited above clearly establish that a statutory bar to judicial review does not block a court's jurisdiction to review unauthorized agency action.

selected for the first round on a CMS website. *See* Complaint ¶¶ 32-39. Defendants failed to comply with their statutory obligation.

There is no evidence – much less "clear and convincing evidence" – that Congress intended to foreclose judicial challenges to the Secretary's failure to abide by his mandatory duties under section 1395hh(a) through the judicial review bar found in section 1395w-3(b)(10)(D). The statutory bar to judicial review makes no reference to the Secretary's rulemaking obligations under the Medicare Act. The Court therefore has jurisdiction over plaintiffs' claim that defendants acted in contravention of the Medicare Act in failing to promulgate by regulation the selection of mail order diabetic supplies as an item for competitive bidding. [4] Indeed, the Secretary's action in selecting mail order diabetic supplies as an item for competitive bidding without following the procedural requirements of section 1395hh(a) is *ultra vires*, and the Court likewise has jurisdiction to invalidate the Secretary's unauthorized act. *See supra* at 13-14.

---

[4] In *Amgen*, the D.C. Circuit concluded that, if the Secretary had the authority to make the substantive decision challenged by the plaintiffs, any contention that the Secretary's decision was arbitrary, capricious, or "procedurally deficient" was irrelevant, because if the Secretary had the authority to make the decision, "judicial review is precluded and it does not matter how the Secretary made the decision." 357 F.3d at 114. This analysis appears contrary to the Supreme Court's instructions in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). In *Overton Park*, the Court explained that, in reviewing agency action, the court must first decide whether the Secretary acted within the scope of his authority. 401 U.S. at 416. But even if the Secretary had not exceeded his authority, the court must still consider whether the Secretary's decision was arbitrary and capricious or otherwise not in accordance with law and "whether the Secretary's action followed the necessary procedural requirements." *Id.* at 416-17. Moreover, the plaintiffs in *Amgen* did not appear to bring any challenge based on the Secretary's failure to adhere to 42 U.S.C. § 1395hh, as plaintiffs here assert, nor did they appear to rely on the mandamus statute as an independent basis for the Court's jurisdiction, as plaintiffs do here. *See* 357 F.3d at 108. The *Amgen* decision, therefore, should not foreclose the Court's ability to review plaintiffs' challenge here to the Secretary's failure to follow the necessary procedural requirements of section 1395hh.

### III.    PLAINTIFFS HAVE STANDING AND THIS CASE IS RIPE FOR JUDICIAL REVIEW

#### A.    Plaintiffs Have Article III Standing

Defendants' argument that plaintiffs lack Article III standing has no merit.    "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred . . . or proved . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue.  If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).  There should be "little question" that, as Medicare providers that are subject to the defendants' challenged application of the MMA's directive to establish a competitive bidding program, plaintiffs have standing to bring this lawsuit.

To establish Article III standing, plaintiffs must show that they have suffered injury in fact that is "concrete and particularized" and "actual or imminent, not 'conjectural or hypothetical.'"  *Lujan*, 504 U.S. at 560 (citations omitted).  Plaintiffs must also show that the injury of which they complain is traceable to the action challenged and that the injury is likely to be "redressed by a favorable decision."  *Id.* at 560-61 (citation omitted).  Defendants only question the "injury" element of this three-prong standing analysis.  Specifically, defendants argue that plaintiffs have not alleged actual injury resulting from defendants' actions, and suggest that plaintiffs may not ever suffer injury "once the DMEPOS competitive bidding program is implemented," because plaintiffs have not alleged in the complaint whether they submitted a bid to be a supplier in the program.  Def.'s Br. at 14.

Defendants are wrong on both counts.  First, plaintiffs have alleged actual injury. Plaintiffs are Medicare–enrolled suppliers in good standing that furnish Medicare beneficiaries

with diabetic testing supplies through the mail. *See* Complaint ¶¶ 12-13. The Secretary's new rule and program announcement has created a dual class of suppliers for diabetic medical supplies: mail-order suppliers and store-front suppliers. *See id.* ¶¶ 4-5. Mail order suppliers must choose to participate in the new competitive bidding program or be shut out as Medicare suppliers completely, while store front suppliers will continue to be able to participate in Medicare without being subject to the competitive bidding program. *See id.* ¶ 5. For mail-order suppliers, there are only four possible outcomes: (1) they will not be able to participate in Medicare if they do not submit a bid; (2) they will not be selected as a winning supplier if they do submit a bid; (3) they will be a winning supplier, and will be reimbursed at payment amounts less than the traditional fee schedule payment methodology; or (4) they will be a winning supplier that chooses not to contract with the agency because the payment amounts offered under the competitive bidding contract are so far below the supplier's actual bid that the supplier determines that it cannot afford to participate. *See* 42 U.S.C.A. § 1395w-3(b)(2)(A)(iii); Complaint ¶¶ 47-51. Store front suppliers, in contrast, will continue to be able to provide the very same diabetic supplies to any Medicare customers and be reimbursed at the higher fee schedule payment amount. *See* Complaint ¶¶ 47-48.

The competitive bidding program has created a competitive advantage for store front suppliers, and mail order suppliers have therefore suffered a legally cognizable "injury in fact." The D.C. Circuit recognizes that parties "'suffer constitutional injury in fact when agencies . . . allow increased competition' against them." *Fin. Planning Assoc. v. SEC*, 482 F.3d 481, 486 (D.C. Cir. 2007) (citation omitted) (finding plaintiffs had standing to challenge SEC rule that created dual standard for provision of investment advice among two groups that compete for customers). Although further injury may (and likely will) accrue once winning suppliers are

selected, plaintiffs have already suffered injury through the defendants' unlawful change to the Medicare reimbursement process. *See Clinton v. City of New York*, 524 U.S. 417, 431 n.16 (1998) (finding "cancellation of the legislative equivalent of a favorable final judgment causes immediate injury"). Injury is therefore established regardless of whether plaintiffs submitted a bid, or whether they are ultimately selected as a winning supplier.[5] *See Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 853-54 (D.C. Cir. 2006) (finding that plaintiffs "surely" have standing to challenge provisions in Final Rule that diminished their bargaining position, regardless of whether agency would ever exercise its unilateral right to abrogate collective bargaining agreements).[6] This injury was present at the time plaintiffs filed their complaint, and remains now.[7]

Plaintiffs also have standing to raise their claim of "procedural injury" based on defendants' acts in selecting "mail order diabetic supplies" as an item for competitive bidding

---

[5] If the Court concludes, however, that further allegations are needed to establish Article III standing in this case, the complaint could readily be amended. "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (internal citation omitted). Plaintiff Americare Heath Systems can show that it submitted a bid to supply mail order diabetic supplies in the competitive bidding program, and thus suffered further injury by incurring the expense and burden of preparing a bid.

[6] Cases cited by defendants are inapposite. The current case does not rest on claims of "abstract stigmatic injury" or injury not fairly traceable to the government, as was the case in *Allen v. Wright*, 468 U.S. 737, 755-57 (1984). Nor does the case rest on claims of indirect harm or allegations of injuries to third parties, as seen in *Warth v. Seldin*, 422 U.S. 490, 504-05, 510, (1975). Nor is there an absence of sufficient likelihood of future injury here, as was the case in *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

[7] Defendants' description of the DMEPOS competitive bidding program as not yet implemented is misleading. *See* Def. Br. at 14. At the time the complaint in this action was filed on July 23, 2007, defendants had already made their internet announcement – in contravention of the APA and 42 U.S.C. § 1395hh – that only "mail order" diabetic medical suppliers would be subjected to the competitive bidding program. *See* Complaint ¶ 39. Shortly thereafter, the bidding window was closed, *see* Kaiser Decl. ¶ 5, and suppliers are now scheduled to be selected in March 2008. The program, in other words, is already being "implemented."

without following rulemaking procedures mandated by the Medicare Act and the APA. "'The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.'" *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005) (quoting *Lujan*, 504 U.S. at 572 n.7)). And "'[a] plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result.'" *Id.* (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002)).

Plaintiffs readily meet the "procedural injury" test for standing in this case. "The plaintiff must show, first, 'that the defendant's acts omitted some procedural requirement,' and second, 'that it is substantially probable that the procedural breach will cause [an] essential injury to the plaintiff's own interest.'" *Defenders of Wildlife v. Kempthorne*, No. 04-1230, 2006 U.S. Dist. LEXIS 71137, at *44-45 (D.D.C. Sept. 29, 2006) (citation omitted). As explained in the complaint, defendants failed to follow the procedural requirements of the APA, 5 U.S.C. § 553, and Medicare Act, 42 U.S.C. § 1395hh. *See* Complaint ¶¶ 57-66. CMS announced its selection of items and services for competitive bidding on its web site, and not in accordance with notice and comment rulemaking procedures. Complaint ¶¶ 7, 32-39. It also failed to provide a concise and general statement of the basis and purpose for its decision to treat diabetic supplies differently for payment purposes based solely on a provider's method of delivering the products. Complaint ¶ 7. Thus, plaintiffs have shown that the defendants' acts "omitted some procedural requirement." *Defenders of Wildlife,* 2006 U.S. Dist. LEXIS 71137, at *44. The complaint also establishes the injury to plaintiffs' specific interests due to this procedural

omission.  *See* Complaint ¶ 7.  By failing to select the product categories for competitive bidding through promulgation in a formal regulation and by failing to follow notice and comment rulemaking procedures, defendants did not allow plaintiffs the opportunity to comment on the creation of a "mail order diabetic testing supplies" product category for the 2008 competitive bidding program, and did not provide the reasoning for its selection of the category.  *See id.* Plaintiffs have standing, including procedural injury standing, in this case.

### B.   This Case Is Ripe For Judicial Review

The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  Defendants' assertion that any injury to plaintiffs is speculative at this point, *see* Defs. Br. at 15, reflects an apparent misunderstanding of the claims raised by plaintiffs in this litigation.  Plaintiffs' claims clearly are ripe for judicial review.

"'Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'"  *Nat'l Assoc. of Home Builders v. U.S. Army Corps of Engineers*, 440 F.3d 459, 463 (D.C. Cir. 2006) (citations omitted).  Consideration of these factors readily shows that this lawsuit is ripe for review.  Under the first prong of the ripeness inquiry, the court looks "'to see whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'"  *Nat'l Assoc. of Home Builders*, 440 F.3d at 463-64 (citations omitted).  The issues raised by plaintiffs, specifically, whether the defendants (1) exceeded their delegated authority in

selecting "mail order diabetic supplies" as an item for competitive bidding and (2) violated the Medicare Act and the APA in failing to promulgate through notice and comment rulemaking procedures their selection of mail order diabetic supplies, are "purely legal." Thus, because plaintiffs are bringing "'[a] purely legal claim in the context of a facial challenge,'" it is "'presumptively reviewable.'" *Nat'l Assoc. of Home Builders*, 440 F.3d at 464 (citations omitted). Moreover, no further fact finding or more "concrete setting" would benefit the Court's review of plaintiffs' challenge, and the agency's action is final. Although the defendants state that the "DMEPOS competitive bidding program will not go into effect until at least July 2008," Def. Br. at 15, the program is, in fact, already being implemented. The key event underlying plaintiffs' claim – defendants' selection of mail order diabetic supplies is an item for competitive bidding – occurred prior to the filing of plaintiffs' complaint. And although it remains to be seen which suppliers will be selected and what the rate of reimbursement will be, *see* Def. Br. at 15, as discussed above, the injury to plaintiffs is already present. The "best" possible outcome available to plaintiffs is to be selected as a supplier under the competitive bidding program and be paid less than store front suppliers for the provision of the exact same items to Medicare beneficiaries. *See supra* at 18. There is no reason to wait; plaintiffs' claims are fit for judicial review.[8]

Under the second prong of the ripeness inquiry, the Court considers "'not whether [the parties] have suffered any 'direct hardship,' but rather whether *postponing* judicial review would

---

[8] This is not a case like *Texas v. United States*, cited by defendants, that "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" 523 U.S. 296, 300 (1998) (citations omitted). The 2008 competitive bidding program is well underway, and the defendants have made their selection of product categories for the first round of the program. Defendants' focus on suppliers submitting bids or being selected as winning suppliers is a red herring; such actions have no impact on the purely legal challenges raised by plaintiffs in this lawsuit.

impose an undue burden on them or would benefit the court.'" *Nat'l Assoc. of Home Builders*, 440 F.3d at 464 (citations omitted). Defendants have not identified significant interests favoring delay in resolving this case. Thus, "where, as is the case here, 'there are no significant agency or judicial interests militating in favor of delay, [lack of] hardship cannot tip the balance against judicial review.'" *Nat'l Assoc. of Home Builders*, 440 F.3d at 465 (citations omitted); *see also American Lithotripsy Soc'y of America v. Thompson*, 215 F. Supp. 2d 23, 31 (D.C. Cir. 2002) ("Where the fitness of the issues is established, . . . 'hardship' cannot tip the balance against judicial review.") (citation omitted). Postponing judicial review of the claims would also impose an undue burden on plaintiffs. If the Court waits until suppliers are selected, as defendants appear to suggest as the preferred route, the competitive bidding program will be well underway and potentially difficult to stop mid-tracks. The plaintiffs and the agency would benefit now from a ruling on the legality of the program before winning suppliers are announced and the new payment system is operative. Finally, defendants point to a purportedly "materially identical case" where a court "dismissed a challenge to the DMEPOS competitive bidding program for lack of ripeness." Def. Br. at 14-15. The referenced case, *Hewitt v. Leavitt*, is not "materially identical" to the present case. The plaintiffs in *Hewitt* were individual Medicare beneficiaries and suppliers, and they raised constitutional challenges that, as pleaded, depended on a showing of actual injury based on certain suppliers not being selected under the competitive bidding program. *See* Plaintiffs' Original Complaint for Injunctive and Declaratory Relief, *Hewitt v. Leavitt*, No. 3-07CV1038-K (N.D. Tex. June 12, 2007) (available on Pacer). The legal issues raised in this current lawsuit are different, and are ripe for review.

### C. Plaintiffs Have Prudential Standing

Defendants cannot legitimately challenge plaintiffs' prudential standing to bring this lawsuit. "'[T]he [zone of interests] test is not meant to be especially demanding.'" *Amgen*, 357

F.3d at 108 (quoting *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399 (1987)). And "[p]arties motivated by purely commercial interests routinely satisfy the zone of interests test under this court's precedents." *Amgen*, 357 F.3d at 109.

As defendants note, "[t]o satisfy the requirements of prudential standing, a plaintiff must show . . . that the injury he alleges falls within the 'zone of interests to be protected or regulated by the statute.'" Def. Br. at 16 (quoting *Transmission Agency of Northern California v. FERC*, 495 F.3d 663, 670 (D.C. Cir. 2007)). While defendants acknowledge this standard, their argument focuses solely on the "to be protected" aspect of the test, and ignores the fact that entities "***to be regulated***" by a particular statute also have prudential standing. The zone of interest test, in fact, "does not require an 'indication of congressional purpose to benefit the would-be plaintiff." *American Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 815 (D.C. Cir. 2005).

In *American Chiropractic*, the plaintiff was an organization representing the interests of chiropractors, who were subject to increased competition for Medicare beneficiaries' business by the Secretary's decision to extend Medicare reimbursement for certain services to medical doctors and osteopaths, and not just chiropractors. The court readily found prudential standing: "The Association's claim here – that the Secretary has effectively cut off its members from potential patients who are members of HMOs and similar organizations – is narrower [than if the Secretary had simply refused reimbursement to chiropractors at all]. But this scarcely alters the analysis. In both situations the interests of enrollees and the interests of chiropractors converge: the chiropractor provides the service, the enrollee receives it, and Medicare provides reimbursement. This is more than enough to satisfy the less-than-demanding zone-of-interest test." *Id.* at 815-16 (citation omitted). The same result applies here. Plaintiffs' interests

- 24 -

converge with the enrollees, and the defendants' actions, which potentially cut plaintiffs off from providing diabetic testing supplies the Medicare enrollees, brings plaintiffs within the zone-of-interests of the statute. Likewise, plaintiffs' interest as Medicare providers adversely impacted by the mail order diabetic supplies competitive bidding program is more than enough to satisfy the zone-of-interest test.[9]

Defendants' prudential standing argument is ultimately reduced to a "so what" rhetorical question in response to plaintiffs' judicial challenge. *See* Def. Br. at 18. This cavalier sentiment is consistent with defendants' prior disregard of plaintiffs' rights and defendants' own statutory obligations, which led to this lawsuit in the first place. In any event, defendants do not appear to appreciate the point of this lawsuit. It is not to challenge the competitive bidding program itself or the defendants' implementation of quality standards for providers, as defendants' suggest. *See* Def. Br. at 18. The issue is whether the defendants can establish such a program for certain items and services, not based on what the item or service is, but on how it is delivered to beneficiaries, when there is no statutory authorization for defendants to do so, and when such a decision is made outside of appropriate rulemaking procedures. The result of defendants'

---

[9] Defendants rely on *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517 (1991), and represent the holding of the case to be: "where a plaintiff's interest in 'maximizing its profits, apparently by avoiding competition with other manufacturers' would be 'more likely to frustrate than to further statutory objectives,' his interests are outside the statute's 'zone of interests' and he therefore lacks prudential standing." Def. Br. at 16. There is no such language in the *Air Courier Conference* decision. In that case, the U.S. Supreme Court concluded that *employees* of the U.S. Postal Service did not have prudential standing to challenge regulations under a statute that was intended to protect the Postal Service itself. *Id.* at 524-31. Here, the plaintiffs are entities directly governed by the MMA, not employees of an entity governed by the MMA. *Green v. Cashman*, 605 F.2d 945 (6th Cir. 1979), another case cited by defendants, involved a due process challenge brought by a service provider; it is not relevant to this case. Finally, plaintiffs do not purport to bring this action on behalf of Medicare beneficiaries. Defendants' discussion of *Kowalski v. Tesmer*, 543 U.S. 125 (2004), *see* Def. Br. at 17 n.8, is therefore of no moment. It should be noted, however, that once plaintiffs establish their own standing, they "may argue the public interest in support of [their] claim that the agency has failed to comply with its statutory mandate." *Sierra Club v. Morton*, 405 U.S. 727, 737 (1972).

unlawful action is that plaintiffs are being treated differently than store front suppliers of the exact same items and services and are guaranteed to suffer economic injury. Plaintiffs have been, and will continue to be, injured by the defendants' unlawful acts and have standing to raise the issues presented in this lawsuit.

**IV.    DEFENDANTS HAVE RAISED VALID CLAIMS FOR RELIEF BASED ON DEFENDANTS' UNLAWFUL SELECTION OF MAIL ORDER DIABETIC SUPPLIES AS AN ITEM FOR COMPETITIVE BIDDING**

There are four counts in plaintiffs' complaint, which challenge the defendants' unauthorized selection of mail order diabetic supplies as an item for competitive bidding through a CMS web site, in contravention of the rulemaking requirements of the Medicare Act and the APA. In a five–page argument, defendants purport to show that plaintiffs have failed to state a claim for which relief can be granted. Yet defendants fail to address the second or fourth counts of the complaint, and the arguments they do present confuse the issue of defendants' statutory authority with the issue of notice and comment rulemaking. Plaintiffs' complaint readily survives the defendants' misdirected 12(b)(6) argument.

The first count of Plaintiff's complaint alleges that the Secretary acted outside his statutory authority in treating "mail order" diabetic suppliers differently from "store front" diabetic suppliers under the new competitive acquisition program. Defendants' lead argument in favor of dismissal of this claim is tellingly obtuse: rather than point to any part of the **MMA** that authorizes the Secretary's act, defendants emphasize that **HHS's regulation** "allowed the Secretary to distinguish between a given item by delivery mode." Def. Br. at 21.[10] The

---

[10] As discussed below, the definition of "item" in the proposed rule did not signal any intention by defendants to define items by their mode of delivery. *See infra* at 30-31. Rather, defendants significantly revised the definition of "item" for the final rule, and it was only then that "item" was specifically defined to provide that items could be selected based on "how the product is furnished (for example, by mail)." *See infra* at 31-32.

arguments that follow, in which defendants attempt to justify their rulemaking procedure, *see* Def. Br. 21-23, are completely irrelevant to the issue whether the Secretary had the statutory authority to select mail order diabetic testing supplies as an item for competitive bidding in the first place.

Section 1847(A) of the MMA directed the Secretary to implement a competitive bidding program for certain "items and services." *See* 42 U.S.C.A. § 1395w-3(a)(1),(2). Congress specifically defined the "items and services" that were to be identified by the Secretary for inclusion in the competitive bidding program. *See id.* These "items and services" included (1) durable medical equipment and medical supplies, (2) other equipment and supplies, and (3) off-the-shelf orthotics. *See id.* § 1395w-3(a)(2).

Congress explicitly provided for only three instances in which the Secretary could consider the mode of delivery of items and services in establishing the competitive bidding program: (1) in allowing the Secretary to exempt rural areas and areas with low population density within urban areas that are not competitive from the competitive acquisition program, unless there is a significant national market through mail order for a particular item or service, 42 U.S.C.A. § 1395w-3(a)(3)(A); (2) in allowing the Secretary to establish a process whereby a physician could prescribe a particular brand or mode of delivery of an item or service within a particular HCPCS code, if the physician determined that use of the particular item or service would avoid an adverse medical outcome, 42 U.S.C.A. § 1395w-3(a)(5)(A); and (3) requiring the Secretary to conduct a demonstration project on the application of the competitive acquisition program to clinical diagnostic laboratory tests furnished by entities that did not have a face-to-face encounter with the patient (*i.e.*, clinical diagnostic laboratory tests performed on specimens received through the mail or via other means of delivery), 42 U.S.C.A. § 1395w-3(e)(1).

Congress was well aware, therefore, that Medicare suppliers were providing items and services to Medicare beneficiaries through the mail, but only allowed for three well-defined instances in which the mode of delivery of an item or service was to be considered by the Secretary in establishing the competitive bidding program. The defendants' selection of mail order diabetic supplies as an item for competitive bidding does not fit any of these statutorily prescribed categories.

Furthermore, the MMA defines the items and services that are subject to the competitive bidding program to include durable medical equipment and supplies that are covered items as defined in section 1834(a)(13) of the Medicare Act (42 U.S.C. § 1395m(a)(13)) and for which payment would otherwise be made under section 1834(a) of the Medicare Act (42 U.S.C. § 1395m(a)). 42 U.S.C.A. § 1395w-3(a)(2)(A). Section 1834(a) of the Medicare Act does not distinguish between durable medical equipment and supplies provided through the mail versus durable medical equipment and supplies provided through retail stores for payment purposes, and neither do any regulations established by the Secretary under section 1834(a). Splitting the "diabetic supplies" category of items for the competitive bidding program based on the method used to deliver such items to beneficiaries is not contemplated in the MMA or any other part of the Medicare Act.

Plaintiffs have clearly stated a claim, therefore, that defendants acted outside the authority provided to the Secretary in the MMA by establishing "*mail order* diabetic supplies" as an item for competitive bidding. Defendants ultimately muster two arguments to the contrary. *See* Def. Br. at 24-25. Importantly, defendants do not contend that the Secretary's actions were explicitly authorized under the MMA. Instead, defendants first argue that "Plaintiffs' proffered definition [of 'item'] would lead to anomalous results," because it "essentially nullifies the

Secretary's discretion under § 1395w-3(a)(1)(B)(ii), and renders irrelevant for regulation purposes the manner in which Medicare beneficiaries purchase a given item subject to the MMA." Def. Br. at 24. This is not the case. The Secretary retains the discretion to select items and services for earlier rounds of competitive bidding based on "the highest cost and highest volume items and services" or "those items and services that the Secretary determines have the largest savings potential." For example, if the Secretary determines that there is a potential for large savings in the competitive bidding program based on the potential for appreciable savings in the mail order diabetic supplies market, he can select "diabetic supplies" as an item for competitive bidding. The Secretary simply cannot select *only* "mail order" (or *only* "retail") diabetic supplies as an item for competitive bidding, because the statute does not allow him to subdivide items and services for competitive bidding based on their mode of delivery. Defendants' second argument is that "Plaintiffs' interpretation of 'items and services' also has the potential to nullify other provisions of the MMA pertaining the competitive bidding." Def. Br. at 24. They specifically point to § 1395w-3(a)(1)(3)(B), which provides the Secretary with the option to exempt from the competitive bidding program "items and services for which the application of competitive acquisition is not likely to result in significant savings." *Id.* Defendants again miss the point. The Secretary's hands are not tied by limiting his decision-making to the statutory confines; he can exempt any item or service from the competitive bidding program if it is not likely to result in significant savings. He simply cannot exempt certain items from competitive bidding based solely on their method of delivery.

Defendants describe plaintiffs' interpretation of "items and services" under the MMA as "wooden." *See* Def. Br. at 24. More accurately, plaintiffs' interpretation is true to the plain statutory language and the statutory scheme as a whole. "Courts can defer to the exercise of

administrative discretion on internal management matters, but they cannot abdicate their responsibility to insure compliance with congressional directives setting the limits on that discretion." *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003) (*quoting Nat'l Ass'n of Postal Supervisors v. USPS*, 602 F.2d 420, 432 (D.C. Cir. 1979)). In other words, an agency's interpretation of a statutory grant of authority is not without bounds. CMS has gone beyond the bounds of its statutory grant of authority here by selecting a product category for competitive bidding based on mode of delivery.

Although not designated as such, defendants' other arguments on their 12(b)(6) motion primarily respond to plaintiffs' challenge to the Secretary's failure to select items and services for the first round of competitive bidding by regulation through notice and comment rulemaking. *See* Def. Br. at 20-24.[11]  These arguments also fail.

Defendants' argument that they provided adequate notice and opportunity for comment on the selection of mail order diabetic testing supplies omits some important details and misrepresents the rulemaking process underlying this case. *See* Def. Br. at 21-24.  Defendants first argue that, in the May 1, 2006, proposed rule, "item" was defined to mean certain products "identified by a HCPCS code," including "durable medical equipment" and "including "the services directly related to the furnishing of that product to the beneficiary." Def. Br. at 21 (citing 71 Fed. Reg. at 25661).[12]  Nothing in this definition foreshadows that the defendants

---

[11] Defendants do not challenge plaintiffs' allegation that their selection of mail order diabetic supplies as in item for the first round of competitive bidding "established new substantive legal standards of payment and eligibility," which the defendants were required to promulgate through regulation pursuant to 42 U.S.C. § 1395hh(a).  Defendants also do not challenge plaintiffs' assertion that defendants' selection of mail order diabetic supplies was done through a posting on a CMS web site, and not through regulation, and is therefore unlawful.  Defendants have not challenged Count II of plaintiffs' complaint as part of their 12(b)(6) motion.

[12] Defendants state that this "proposed definition responded to a 2004 GAO report recommending that HHS consider delivery mode when designing competitive bidding

would be defining "items" based on their mode of delivery.  The HCPCS codes for durable medical equipment do not distinguish between equipment provided through stores versus equipment provided by mail.  *See, e.g.,* DME MAC Jurisdiction B, 1st Qtr. DMEPOS/PEN Fee Schedule Fees, *available at* www.adminastar.com/Providers/DMERC/FeeSchedule/files/website January2008DMEPOSFeeSchedule.pdf (last visited Feb. 1, 2007).  And despite defendants' conclusory and self-serving statement to the contrary, "services directly related to the furnishing of [a] product do ***not*** "necessarily include" the "method by which a product reaches the beneficiary."  Indeed, the nature of such "services" are described later in the proposed rule: "there are services paid under the physician fee schedule that are associated with the furnishing of blood glucose testing equipment (for example, home blood glucose monitors), ***such as training, education, assistance with product selection, maintenance, and servicing*** . . . ." 71 Fed. Reg. 25669 (emphasis added).  "Product delivery" is not included as a "service." Defendants' argument on this point is specious.

Defendants are on no firmer ground in pointing to other parts of the proposed rule discussing a proposed nationwide or regional mail order competitive bidding program.  *See* Def. Br. at 21-22 (citing 71 Fed. Reg. 25669).  Defendants disingenuously neglect to mention that this proposal was for a program to be effective "on or after January 1, 2010," ***not*** in the first or second rounds of competitive bidding.  *See* Fed. Reg. 25669.

Defendants' final argument, that the definition of "item" included in the final competitive bidding rule was ***revised*** to "indicate that although we will always identify the product by HCPCS code, we may . . . specify a particular method by which the item is furnished," Def. Br.

---

programs."  *See* Def. Br. at 21.  The 2004 GAO Report was discussed in a completely different section of the proposed rule.  *Compare* 71 Fed. Reg. 25661 (defining "items") *and* 71 Fed. Reg. 25669 (discussing GAO Report).

at 23 (quoting 72 Fed. Reg. at 17998), underscores the lack of notice in the original rule. Because this "revised" definition was included in a final rule, plaintiffs had no opportunity to comment upon it.  And because defendants failed to select the actual items and services for the first round of competitive bidding by notice and comment rulemaking, plaintiffs had no opportunity to challenge the defendants' selection of "mail order diabetic supplies" as an item for competitive bidding for the first round of the program.

In sum, defendants have no valid argument that plaintiffs' complaint should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be denied.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request oral argument on defendants' motion to dismiss.

Dated:  February 1, 2008.

Respectfully submitted,

/s/ Frederick Robinson_____
Frederick Robinson
D.C. Bar. No. 367223
Caroline M. Mew
D.C. Bar No. 467354
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 662-0200

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

CAROLINA MEDICAL SALES, INC., et al.,    )
                                          )
                                          )
                  Plaintiffs,             )
                                          )
         v.                               )         No. 1:07-cv-01298-RMU
                                          )
LEAVITT, et al.                           )
                                          )
                  Defendants.             )
_____)

**[PROPOSED] ORDER**

This matter is before the Court on defendants' motion to dismiss.  The motion is opposed

by plaintiffs.

Having fully considered the parties' briefs, any argument of counsel, and the record

herein, the Court hereby DENIES defendants' motion.

Dated:  _____, 2008.


                                   _____

                                   United States District Judge

Persons to be notified of entry:

C. Lee Reeves
Department of Justice
20 Massachusetts Avenue, N.W., Room 7109
Washington, D.C. 20530

Linda Keyser
Department of Health and Human Services
330 Independence Avenue, S.W., Room 5327D
Washington, D.C. 20201

Frederick Robinson
Caroline M. Mew
Fulbright & Jaworski L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004